Jason D. BURDEN, Appellee,

v.

Steve CARROLL, Ferndale Police Officer, Appellant.

No. 03–2149.

United States Court of Appeals, Sixth Circuit.

Aug. 12, 2004.

Frank G. Becker, Frank G. Becker & Associates, Southfield, MI, for Plaintiff–Appellee.

Joseph Nimako, Cummings, McClorey, Davis & Acho, Livonia, MI, for Defendant–Appellant.

Before KENNEDY and GILMAN, Circuit Judges; and SHADUR, District Judge.[*]

### OPINION

SHADUR, District Judge.

After Jason Burden ("Burden") brought an excessive force claim against Officer Steve Carroll ("Carroll") under 42 U.S.C. § 1983 ("Section 1983"), Carroll asserted qualified immunity as the ground for a motion to dismiss or, alternatively, for summary judgment. At the summary judgment stage the district court found that under the version of events most favoring Burden, Carroll had acted outside of clearly established constitutional bounds and was therefore not entitled to qualified immunity. Carroll has filed this interlocutory appeal, and we affirm for the reasons stated in this opinion.

[*] The Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation.

## Background

Like the district court, we too must evaluate the circumstances in the light most favorable to Burden (*Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). What follows, then, are the facts as Burden portrays them (so long, that is, as they are supported by the record).

In the mid-day of June 9, 1999 Burden and his co-worker Larry Shipman ("Shipman") had been going from house to house in a Ferndale, Michigan neighborhood, passing out brochures and soliciting business for their employer Sunshine Window Company, when a man from the neighborhood approached them and asked what they were doing. That inquiry was followed by the man's statement that he was the "neighborhood patrol," his accusation that Burden and Shipman were casing the neighborhood and his threat to call the police if they did not leave. Burden and the self-appointed watchman got into a loud vocal exchange that drew the attention of the whole neighborhood. After the neighbor had gone inside to make good on his threat to call the police, Burden and Shipman gave up trying to solicit customers on that block (figuring that they would not have much luck after they had received such bad publicity). They sat down on the street corner to wait for their ride.

Before long several police cars came streaming into the neighborhood. One police car drove up onto the lawn where Burden and Shipman were sitting, and Carroll jumped out, ran directly up to Burden, pushed him up against a brick wall and demanded to know what he was doing there.[1] Carroll accused Burden of threatening the neighbor and told him—while at the same time showering him with spit and profanities—that his "kind" was not welcome around there (Burden is Hispanic). Burden returned with his own volley of profanities, to which Carroll responded by what Burden described as "slamming him" against the wall and what Shipman described as pushing Burden forcibly "a couple of feet backwards" into the wall.

At that moment Burden's boss arrived to pick up Burden and Shipman and drive them to another neighborhood, explaining to Officer Carroll that Burden and Shipman were working for him. Carroll walked back to his patrol car and called headquarters. After the story checked out, Carroll issued Burden a ticket for soliciting without a permit and drove away (apparently Shipman never received a ticket). Burden's boss drove him home.

Over the next few days Burden's back began to swell up from his collision with the wall (which had protrusions that have not been described in detail, but that certainly could have caused the claimed injuries). Burden, who suffered extreme pain as a result, went to the emergency room to obtain treatment.

On May 28, 2002 Burden filed a Section 1983 action against Carroll in the Eastern District of Michigan to recover for the injuries that he had sustained. As stated at the outset, Carroll moved to dismiss Burden's complaint, or alternatively for summary judgment, based on a claim of qualified immunity. After the district court denied Carroll's motion on August 13, 2003, Carroll timely appealed.

## Qualified Immunity

*Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) altogether.

---

1. Throughout the whole ordeal, Burden maintains that the police officers ignored Shipman

teaches that a district court's denial of qualified immunity is immediately reviewable under the collateral order doctrine. But that is so only to the extent the appeal presents the legal question "whether a given set of facts violates clearly established law" (*Farm Labor Org. Comm. v. Ohio State Highway Patrol,* 308 F.3d 523, 531 (6th Cir.2002)). And that legal question is of course reviewed here de novo (*Summers v. Leis,* 368 F.3d 881, 885 (6th Cir. 2004)).

Qualified immunity affords government officials an immunity from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" (*Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). *Saucier,* 533 U.S. at 201 instructs courts, when evaluating a defendant's claim of qualified immunity, (1) to determine as a threshold matter whether defendant committed a constitutional violation (assuming the facts as the plaintiff portrays them) and then (2) to determine whether the law was clearly established at the time the act was committed. That second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition ..." (*id.*). *Saucier,* 533 U.S. at 202 (internal quotation marks and citations omitted) further draws upon earlier caselaw to explain:

> [T]he right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

Carroll argues that it was not unreasonable for him to push Burden into the brick wall, or at least that a reasonable officer in his shoes would not have known that pushing Burden in that manner violated Burden's Fourth Amendment rights. To that end Carroll contends that the level of force he used was entirely justified because he needed to secure a belligerent suspect who had reportedly threatened someone and who had been seen skulking in and out of backyards. Carroll suggests that at the very least it is easy to understand how an officer could have been mistaken about how much force was too much under the circumstances, particularly because " '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment" (*Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)). And qualified immunity is meant "to protect officers from the sometimes 'hazy border between excessive and acceptable force' " (*Saucier,* 533 U.S. at 206, quoting *Priester v. Riviera Beach,* 208 F.3d 919, 926—27 (11th Cir.2000)).

But the factual scenario that Burden presents does not come anywhere near that hazy border, for under that version of events Carroll's actions, taken as a whole, would be objectively unreasonable. And regardless of whether Carroll was reasonably mistaken about the legality of using some force to secure the area when he first arrived on the scene, there is simply no excuse for the violent shove that allegedly came later in the encounter—the one that assertedly threw Burden a couple of feet back into a brick wall with protrusions, causing what Burden labels as significant injury. According to the series of events as Burden describes them, Carroll

shoved Burden violently even though he already had adequate time to assess the situation and even though any reasonable officer would have concluded that neither Burden nor Shipman posed any safety or flight risk.[2]

It is well established that a police officer cannot continue to use force once a reasonable officer would conclude that force is no longer justified by the circumstances (*Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir.2002)). And that principle applies a fortiori where, as here, the level of force instead escalated needlessly into a particularly violent shove. Because Burden alleges that Carroll did that well after the situation was secured, Carroll cannot claim that he was reasonably mistaken about the degree of force that was appropriate under those circumstances. There can be no doubt that Carroll cannot be given immunity from suit as a matter of law for his conduct on June 9, 1999.

### Conclusion

Under the facts as presented by Burden, which must be credited on Carroll's summary judgment motion (though of course we make no factual findings in that respect), no reasonable officer could have concluded that it was lawful to violently shove Burden in the manner he describes. Because Carroll is therefore not entitled to qualified immunity on Burden's Section 1983 claim, the district court's order is **AFFIRMED.**

---

**2.** Nor does Burden's use of foul language change the analysis (*Jones v. Buchanan*, 325 F.3d 520, 530 (4th Cir.2003); *Vinyard v. Wilson*, 311 F.3d 1340, 1347—48 (11th Cir. 2002)). And that is particularly true when Burden was responding in kind to the profanities that Carroll had aimed at him (*Vinyard, id.*), as well as to what Burden perceived as a racial slur.