**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**File Name:  08a0240n.06**

**Filed:  May 6, 2008**

**No. 07-1640**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| WILLIAM ZANTELLO, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| | | EASTERN DISTRICT OF MICHIGAN |
| SHELBY TOWNSHIP; LOUIS FRANCIS | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| SCOTT PHELPS; KENNETH L. | ) | |
| UNDERWOOD, | ) | |
| | ) | |
| Defendants - Appellants. | ) | |

Before:  BATCHELDER, SUTTON and FRIEDMAN, Circuit Judges.[*]

SUTTON, Circuit Judge.  In this § 1983 action, officers Scott Phelps and Kenneth

Underwood challenge the district court's denial of their summary judgment motions.  Because the

_____

[*] The Honorable Daniel M. Friedman, Senior Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.

officers had probable cause to arrest William Zantello for felonious assault, they are entitled to qualified immunity from Zantello's unreasonable-seizure and malicious-prosecution claims. But because material issues of fact remain over whether the officers used excessive force in carrying out the arrest, they are not entitled to qualified immunity from that claim. We affirm in part and reverse in part.

I.

On the afternoon of July 23, 2004, William Zantello delivered an industrial-sized water cooler to the Dollar Buster convenience store owned by the Almansour family. To move the heavy cooler from his truck into the store, Zantello used the "bars and yankie" method, which requires the mover to yank the cooler across iron bars. As the cooler rolls along the bars, a bar eventually breaks free, and the mover brings the free bar to the front of the cooler, repeating the process and inching the cooler along to its destination.

At some point during the delivery, the Almansours and Zantello became embroiled in an argument over the condition of the cooler, prompting someone—the record does not say who—to report an assault and battery to the Shelby Township police department. When officers Phelps and Underwood arrived on the scene, they found "six or seven" people outside the store "yelling . . . back and forth" at each other and identified two men—David Almansour and William Zantello—as the central figures in the altercation. JA 70.

The officers observed Almansour curse at Zantello and his daughter, and Zantello returned the favor, telling Almansour that his mother "was acting like" a "b****." JA 305. Almansour then "charge[d] at" Zantello, picked up one of the iron bars and raised it as if to hit Zantello. Zantello, who also had been holding an iron bar, "lunged towards [Almansour] to grab [Almansour's] bar." JA 307. At that point, the officers entered the fray, separating the two men and arresting them. Shelby Township charged Zantello with felonious assault but dismissed the charge after Almansour refused to testify against Zantello.

Zantello filed this lawsuit in federal court against the two officers and the township. Invoking § 1983 and the Fourth (and Fourteenth) Amendment, he maintained that the officers unreasonably seized him, used excessive force and maliciously prosecuted him and that Shelby Township failed adequately to train and supervise its officers. Invoking Michigan law, he sought relief for assault and battery, false arrest, false imprisonment, malicious prosecution and gross negligence. In ruling on the defendants' motions for summary judgment, the district court ruled for the township but denied the officers relief from any of the claims. The officers filed this interlocutory appeal challenging the denial of qualified immunity from the federal claims. *See Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985).

II.

In addressing qualified immunity claims, we must adhere to the "rigid order of battle," *Brosseau v. Haugen*, 543 U.S. 194, 201–02 (2004) (Breyer, J., concurring) (internal quotation marks

omitted), set forth in *Saucier v. Katz*, 533 U.S. 194 (2001), requiring us to consider first whether the officers violated the plaintiff's constitutional rights, and second whether the rights were "clearly established," *id.* at 201.

## A.

Did the officers unlawfully arrest Zantello? No, for several reasons. First, the question in this setting is not whether the officers had evidence of guilt beyond a reasonable doubt but whether they had probable cause to believe that he had committed (or was about to commit) a crime. *See Lyons v. City of Xenia*, 417 F.3d 565, 573 (6th Cir. 2005); *see also Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). The crime at issue makes it a felony to "assault[] another person with a[n] . . . iron bar . . . or other dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder." Mich. Comp. Laws § 750.82(1). The law thus requires "(1) an assault, (2) with a dangerous weapon and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v. Avant*, 597 N.W.2d 864, 869 (Mich. Ct. App. 1999).

Second, the undisputed facts show that the officers had a reasonable basis for concluding that Zantello had violated this law or was on the verge of doing so. *See* Mich. Comp. Laws § 750.82(1). Even when we view the facts through Zantello's eyes, this is what the officers had before them. Upon arriving at the store in response to a report of an assault and battery, they observed an "aggressive," "tense" and "hostile" shouting match between Almansour and Zantello, both of whom

were wielding iron bars. After Zantello cursed at Almansour and referred to his mother as a "b****," JA 305, Almansour charged at Zantello, threatened to kill him, "picked up one of [Zantello's] metal poles" and raised it as if he "was going to take [Zantello] out with it." JA 144. Zantello responded by "yell[ing] at him" and "lung[ing] towards him . . . to grab [Almansour's] bar." *Id*. Nothing required the officers to wait until the individuals came to blows before arresting the would-be combatants; probable cause exists when the officers reasonably believe an individual is "about to commit an offense," *DeFillippo*, 443 U.S. at 37, which they could reasonably infer would have happened at any moment had they not intervened.

Zantello counters that, because the officers could not be sure that he had the requisite intent to violate the law, they did not have probable cause. But this argument overstates the officers' burden. "Intent, like any other fact, may be proven indirectly by inference from the conduct of the accused and surrounding circumstances from which it logically and reasonably follows." *People v. Lawton*, 492 N.W.2d 810, 815 (Mich. Ct. App. 1992). No one contests that Zantello was holding an iron bar during the altercation or that he and Almansour were in the midst of a heated, expletive-filled argument, both of which would allow a reasonable officer to believe that Zantello "inten[ded] to injure or place [Almansour] in reasonable apprehension of an immediate battery." *Avant*, 597 N.W.2d at 869.

Zantello adds that, because he was not holding the iron bar when the officers arrested him, they could not reasonably believe that he was "about" to assault Almansour with it. Zantello's own testimony, however, provides an adequate rejoinder. He acknowledges that he held the bar at various

points during the altercation, and he concedes that he "lunged toward" Almansour in an effort to wrestle one of the bars away from him. And of course the bars remained readily accessible to him and within his control, save for the one Almansour grabbed. Indeed, when the officers arrested him, Zantello admits, he had bent down to "mov[e]" the iron bars. Given the "tense," "hostile" and "aggressive" situation, the cauldron of uncertainty about what would happen next and Zantello's access to and control over the iron bars, the officers had ample reason to believe that Zantello was about to commit felonious assault. Of course, even if the officers did not have probable cause to arrest Zantello for this assault offense (which they did), they surely had probable cause to arrest him for a run-of-the-mine assault. *See* Mich. Comp. Laws § 750.81 ("[A] person who assaults or assaults and batters an individual . . . is guilty of a misdemeanor punishable by imprisonment for not more than 93 days . . . ."); *see also Davenpeck v. Alford*, 543 U.S. 146, 153 (2004) (The officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."). The officers are entitled to qualified immunity from this claim.

B.

Did the officers maliciously prosecute Zantello for assault? No, we also conclude. "[A]t a minimum," to succeed on a malicious-prosecution claim under the Fourth Amendment, "a plaintiff must show . . . that there was no probable cause to justify his arrest and prosecution." *Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003) (alterations and internal quotation marks omitted). Even assuming the officers, as opposed to the prosecutors, could be held responsible for the decision to prosecute Zantello for felonious assault, a point we need not decide, Zantello's claim

fails because his arrest and prosecution as a matter of law were based on probable cause. The officers are entitled to qualified immunity from this claim.

C.

In addition to protecting individuals from unreasonable seizures and malicious prosecutions, the Fourth Amendment protects them from excessive force during the course of being arrested. *See Graham v. Connor*, 490 U.S. 386, 394–95 (1989). The question whether force is excessive, like the question whether probable cause exists, turns on the objective reasonableness of the officer's conduct under the circumstances, *id*. at 397, focused in this setting on "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight," *id*. at 396. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (internal quotation marks omitted).

According to Zantello's fact-supported allegations, this is what happened: After he "yelled at [Almansour], and lunged towards him to grab the bar[,] . . . the police officers just literally grabbed [him] and started throwing [him] around." JA 307. The officers "twisted [him] around and jerked on [him]," JA 308, and "slammed [him] up against the refrigerator and twisted [his] knee and twisted [his] arm," JA 296. The officers "push[ed]" Zantello and "man handled" him while leading him to the back of the cruiser. JA 490. When the officers put Zantello in the car, "they slam[med] [his] head into the police car," which gave Zantello "a headache." JA 316.

The "man handling" and arm twisting, Zantello says, injured his left shoulder. As a result of the encounter, he suffered weakness and a decreased range of motion in his arm and consistent pain. The injury made it difficult to sleep, led to a prescription for pain medication and eventually required surgery for a torn rotator cuff.

A material issue of fact exists over the officers' justifications for this use of force. Zantello did not resist or attempt to evade the arrest, the officers nonetheless "man handled" him and "twisted" his arms while arresting him and he suffered at least one injury serious enough to require surgery.

The evidence, we acknowledge, is not one-sided. The violent nature of the crime (felonious assault) and the fact that the officers reasonably could have concluded that Zantello posed an immediate threat to the safety of the officers or others favor the officers. The problem for the officers is that, according to Zantello, they continued to use force even after they had full control of the scene and even after he cooperated with them. More fully developed facts might well reveal that the officers' use of force was reasonable—if, for example, the arm twisting was only slight and incidental to the officers' effort to restrain Zantello rather than a gratuitous post-arrest exercise of force. But because at this stage in the proceeding we must view the evidence in Zantello's favor, we agree with the district court that these allegations—supported by the record—create a triable issue of fact over whether the officers used excessive force.

We also agree with the district court that this constitutional claim was "clearly established." Our cases say that "the right of a nonviolent [and non-resistant] arrestee to be free from unnecessary pain knowingly inflicted during an arrest [i]s clearly established." *St. John v. Hickey*, 411 F.3d 762, 772, 774 (6th Cir. 2005). In the light of this precedent, a reasonable official would understand that the officers' alleged conduct violated Zantello's rights. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). One of the officers in this case, indeed, nearly admitted as much: Officer Underwood testified that, if the officers "twisted [Zantello's] arm" in the process of arresting him when he offered no resistance (which is just what Zantello alleges), that would "not be appropriate." JA 453–54. The district court did not err in concluding that Zantello's claim implicates genuine questions of material fact that a jury must decide.

## III.

For these reasons, we affirm in part and reverse in part.