RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0165p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ALAN MILLER,

        *Plaintiff-Appellant,*

        *v.*

SANILAC COUNTY and JIM WAGESTER, in his
individual and official capacity,

        *Defendants-Appellees.*

No. 09-1340

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 07-14965—Patrick J. Duggan, District Judge.

Argued: March 10, 2010

Decided and Filed: June 4, 2010

Before: MERRITT, COLE, and COOK, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Shawn C. Cabot, CHRISTOPHER TRAINOR AND ASSOCIATES, White Lake, Michigan, for Appellant. Megan K. Cavanagh, GARAN LUCOW MILLER, P.C., Detroit, Michigan, for Appellees. **ON BRIEF:** Christopher J. Trainor, CHRISTOPHER TRAINOR AND ASSOCIATES, White Lake, Michigan, for Appellant. Rosalind Rochkind, John J. Gillooly, GARAN LUCOW MILLER, P.C., Detroit, Michigan, for Appellees.

        MERRITT, J., delivered the opinion of the court, in which COLE, J., joined. COOK, J. (pp. 18-21), delivered a separate opinion concurring in part and dissenting in part.

_____

**OPINION**

_____

        MERRITT, Circuit Judge. In this lawsuit brought under 42 U.S.C. § 1983, plaintiff, Paul Miller, is claiming multiple constitutional violations against him during a traffic stop and arrest by Deputy Sheriff Jim Wagester and Sanilac County, Michigan. Miller received several traffic code violations and civil infractions, including drunk driving, all of which

were later dismissed when Miller's blood-alcohol level was determined to be 0.00%. The District Court issued an order granting defendants' motion for summary judgment, which Miller now appeals. *Miller v. Sanilac County*, No. 07-14965, 2009 WL 416438 (E.D. Mich. Feb. 18, 2009). The key issues before this Court are whether Wagester had probable cause to arrest Miller for drunk driving or for reckless driving after he drove through a stop sign on an icy road. For the reasons stated below, we affirm in part and reverse in part the grant of summary judgment.

## I. Factual Background and Procedural History

Miller began the night of February 19, 2006, with some friends at a demolition derby from 8:00 p.m. to about 11:00 p.m.. The temperature was approximately zero degrees with a significant wind-chill, and there is no dispute that there was ice on the roads. After dropping off his friends on the way home, he assisted another friend he learned had driven into a ditch. Around midnight, Miller approached a stop sign at an intersection. Miller states that he was driving at approximately 30 m.p.h. but was unable to stop because of the ice. Wagester, who was observing the area after hearing reports of an underage drinking party nearby, estimated that Miller was traveling over 60 m.p.h. before slowing down to about 30 m.p.h. as he went through the stop sign.[1] After Wagester activated his lights, Miller claims to have stopped immediately, whereas Wagester stated that Miller continued for a quarter mile.

Upon walking up to Miller's car, Wagester asked for Miller's license, registration, and proof of insurance. Miller claims he had his seatbelt on at this time whereas Wagester said Miller never had his seatbelt on. Because Miller's license had been confiscated for a previous arrest for Operating a Vehicle while Intoxicated (hereinafter "drunk driving"), Miller gave him the documentation he was provided to use as a license. Miller alleges he had proper registration and proof of insurance but could not produce them immediately. Both agree that Wagester walked away as Miller was searching his glove box and Wagester did not ask for them again.

---

[1]Miller and Deputy Wagester gave conflicting accounts of many aspects of their encounter. Because Miller is the non-movant in the summary judgment motion and we must accept as true his evidence and draw "all justifiable inferences" in his favor, Miller's account will be provided (with notes where significant disparities arise). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Wagester claims to have "detect[ed] a slight odor of alcohol coming from [Miller's] breath." After running a check on Miller, he learned of the drunk driving arrest and asked him to step out of the vehicle to perform field sobriety tests. According to Wagester, Miller did not stagger or stumble as he got out of the vehicle and walked around, but his eyes appeared "glazed or glassy." Miller was asked to recite the ABCs, walk a straight line, touch his fingertips to his thumb, touch his nose, and count backwards from 54 to 43. Wagester determined he failed all but one,[2] although Miller said he was not informed whether or not he passed any of the tests. Miller declined to take a preliminary breath test because he did not trust Wagester and thought it was less reliable than a blood test, which he later agreed to take.

Thereafter, Wagester placed Miller under arrest for reckless driving. Miller claims that Wagester effected the arrest by spinning him around, kicking his feet apart, and slamming him against his vehicle. Miller concedes, however, that he was not hurt by any of these actions. Miller was put in handcuffs and placed in a patrol car. Wagester estimates that Miller was out of the vehicle for six to eight minutes, but Miler claims it was 45 minutes. At some point, Miller complained that his handcuffs were too tight. They were removed during the booking process, although Miller is unsure how long they remained on.

After processing, Wagester secured a search warrant from a magistrate judge authorizing him to draw Miller's blood for further investigation of suspected drunk driving. Miller also gave consent. Miller was transported to a nearby hospital for the blood draw. The individual who drew Miller's blood observed that Miller was shaking and was cold to the touch, which Miller claims to be the result of being subjected to the cold during the arrest. Miller alleges that he passed out from the cold at some point

---

[2]According to the Alcohol Influence Report, Miller "did not turn around" in the Heel to Toe test, "missed tip of nose" in the Finger to Nose test, and "missed R&M" in the ABC test (but passed a second attempt). In the Count Backward test, in which Miller was asked to count backwards from 54 to 43, it appears Miller reached 47 before counting: 48, 47, 45, 44, 43, 42, 41. Although the Finger to Thumb test is marked "passed," "very careful" is listed in the comments section. It is also worth noting that Wagester circled neither "Faint" nor "None" under "Odor of alcohol on breath," and neither "Watery" nor "Normal" under "Eyes." However, Wagester did circle "Swaying" under "Balance."

while he was at the jail although he indicated on a medical questionnaire at the time that he was in good physical condition and was not having any medical problems.

Deputy Wagester wrote seven tickets for Miller: failure to use a seatbelt, no proof of registration, no proof of insurance, reckless driving, refusal to submit to a breath test, minor in possession, and 0.02% blood-alcohol-no-tolerance-law violation.[3] Miller left the jail on February 19, 2006, on a personal recognizance bond. The next week, Miller's blood test results came back indicating that Miller's blood-alcohol level was 0.00%. In early April, all charges against Miller related to this case were dismissed. A few days later, Deputy Wagester requested that the lab test Miller's blood for controlled substances. That test also came back negative.

Miller filed the present suit against Deputy Wagester and Sanilac County on November 20, 2007. Against Deputy Wagester, Miller alleged three constitutional violations pursuant to 42 U.S.C. § 1983 (use of excessive force, Fourth Amendment search and seizure violations, and malicious prosecution) and four state tort claims (assault and battery, false arrest/false imprisonment, malicious prosecution, and gross negligence). Miller also alleged that Sanilac County is liable for Deputy Wagester's constitutional violations because it inadequately trains and supervises its officers. In a motion for summary judgment, Deputy Wagester argued that he is entitled to qualified immunity on all counts and Sanilac County asserted that Miller failed to state a claim against it. The District Court issued an order granting the motion, which Miller now appeals. This Court reviews the district court's grant of summary judgment *de novo*. *Spears v Ruth*, 589 F.3d 249, 253 (6th Cir. 2009). Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citing Fed. R. Civ. P. 56(c)). We must view all the facts and the inferences in the light most favorable to the nonmoving party and uphold a grant of summary judgment only where the record as a whole could not lead a rational trier of fact to find for the non-moving party. *Id.*

---

[3]The reduced 0.02% limit was the result of Miller's previous OWI arrest. Had there been no previous such arrest, the limit would have been higher.

## II. Liability of Deputy Wagester

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).  As the District Court recognized, only the first prong is at issue here.

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Determining whether government officials are entitled to qualified immunity generally requires two inquiries: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred?  Second, was the right clearly established at the time of the violation?" *Id.* at 538-39.[4]  These prongs need not be considered sequentially. *Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009) (citing *Pearson v. Callahan*, 129 S. Ct. 808 (2009)).

The issue of qualified immunity may be submitted to a jury only if "the legal question of immunity is completely dependent upon which view of the [disputed] facts is accepted by the jury." *Humphrey v. Mabry*, 482 F.3d 840, 846 (6th Cir. 2007) (quoting *Brandenburg v. Cureton*, 882 F.2d 211, 216 (6th Cir. 1989)).

---

[4]The District Court, following *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003), applied a three-step test which further considers whether a reasonable person would have known about the right and whether the official's actions were "objectively unreasonable." However, more recent decisions apply the two-step test provided above. *See, e.g.*, *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008); *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

**A. Section 1983 Federal Constitutional Claims**

**1. Malicious Prosecution**

The parties on appeal have not challenged the District Court's holding that Miller's federal Fourth Amendment claim for malicious prosecution under 42 U.S.C. § 1983 may be considered under the same criteria as under Michigan state law. *Miller*, 2009 WL 416438, \*4. This court and other courts have debated the question of whether the Fourth Amendment, when it becomes a matter of substantive due process under the Fourteenth Amendment, incorporates the varying elements of the state tort of malicious prosecution. *Compare Frantz v. Village of Bradford*, 245 F.3d 869, 873-75 (6th Cir. 2001) (rejecting incorporation of state law elements) *with Darrah v. City of Oak Park*, 255 F.3d 301, 309-10 (6th Cir. 2001) (reaching opposite conclusion). Assuming without deciding, because the parties have not challenged the District Court's holding that the state law is the proper standard, we will apply the Michigan standard. To succeed on a malicious prosecution claim under Michigan law, a plaintiff must prove that:

> (1) the defendant has initiated a criminal prosecution against him, (2) the criminal proceedings terminated in his favor, (3) the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice.

*Walsh v. Taylor*, 689 N.W.2d 506, 516-17 (Mich. Ct. App. 2004).

The District Court properly granted summary judgment on the malicious prosecution claim with respect to four of the seven tickets because they constituted civil infractions, not criminal prosecutions. *See* Mich. Comp. Laws §§ 257.328, 257.223, 257.625a(2)(d), 257.710e (designating failure to provide proof of insurance, failure to provide proof of registration, refusal to submit to a breath test, and failure to wear a seatbelt as civil infractions); *see also Huron Twp. v. City Disp. Sys., Inc.*, 531 N.W.2d 153, 158 (Mich. 1995) (stating that "[c]ivil infractions are not crimes").

As to the three criminal charges — reckless driving, minor in possession, and violation of the 0.02% no-tolerance law — the District Court found that Deputy

Wagester had probable cause to arrest. An officer has probable cause when "the facts and circumstances known to the officer warrant a prudent man in believing that an offense has been committed." *Henry v. United States*, 361 U.S. 98, 102 (1959).

> In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible. But under § 1983, an arresting agent is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent.

*Parsons v. City of Pontiac*, 533 F.3d 492, 501 (6th Cir. 2008) (citations and internal quotation marks omitted). An arrest is valid so long as there is probable cause for a single charge of an arrestable offense. *Lyons v. City of Xenia*, 417 F.3d 565, 573 (6th Cir. 2005). Under Michigan law, arrestable offenses include felonies, misdemeanors, and ordinance violations, but not civil infractions. *People v. Chapman*, 387 N.W.2d 835, 839 n.11 (Mich. 1986); Mich. Comp. Laws § 764.15. We conclude that whether or not Wagester reasonably believed the arrest was lawful is a genuine issue of material fact that should be submitted to a jury.

**(i) Arrest for Drinking while Driving.** — Wagester is correct that "subsequent evidence that plaintiff had not been drinking does not vitiate the probable cause established by what the officer observed and the results of the field sobriety tests." (Resp. Br. at 24-25.) However, the fact that Miller's blood alcohol was found to be 0.00% casts doubt on Deputy Wagester's claims that Miller smelled of alcohol and failed the field sobriety tests. Although the District Court notes that "Miller has not argued that he actually passed the field sobriety tests or that Deputy Wagester lied about his other perceptions," Miller stated in his briefs here and in the District Court, "even though [Miller] had not been drinking that night nor did he exhibit any physical manifestations that he had been drinking, [Wagester] ordered him to exit his vehicle and performed a series of field sobriety tests on him for no other reason than to harass him." (Pet. Br. at 27; Plaintiff's Response to Defendants' Motion for Summary Judgment, R.30, p. 8). It is unclear how Miller could more specifically challenge Wagester's perceptions of Miller's odor, appearance, and performance on field sobriety tests, especially because

he would have no way of knowing how the test is evaluated and claims he was not told whether he had failed and why.

Although Wagester's claims, if believed, would constitute probable cause to arrest for driving under the influence of alcohol, a jury could reasonably conclude, in light of the 0.00% blood alcohol result and Miller's testimony, that Wagester was being untruthful generally about his observations and did not have probable cause to believe Miller was drinking. In light of the conflict in the evidence, the jury could conclude that Wagester was lying.

**(ii) Arrest for Reckless Driving.** — The District Court concluded that Wagester had probable cause to arrest for reckless driving because "Miller admits that he ran a stop sign going approximately 30 miles per hour." This exaggerates Miller's deposition testimony. Although he acknowledged driving 30 miles per hour past a stop sign, he also stated that the road was icy and he was unable to brake at the intersection. An "officer must consider the totality of the circumstances, recognizing both the inculpatory *and* exculpatory evidence, before determining if he has probable cause to make an arrest. . . . [A] suspect's satisfactory explanation of suspicious behavior is certainly a factor" in determining whether probable cause exists. *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). For example, this Court upheld denial of summary judgment in a similar § 1983 suit against a police officer when the plaintiff ran a red light but claimed his car stalled as he tried to go through the light when it was yellow. *Ciak v. City of Louisville*, No. 93-6119, 1995 WL 7959, *1 (6th Cir. Jan. 9, 1995).[5]

Under Michigan law, reckless driving is driving a vehicle "in willful or wanton disregard for the safety of persons or property." Mich. Comp. Laws § 257.626. Because Deputy Wagester was aware of the icy road conditions—which could certainly have

---

[5]*Ciak*, a case not cited by either party or the District Court, has many other parallels, including an officer's claim that the plaintiff failed an alphabet and heel-to-toe test, alleged physical signs of intoxication, and a 0.00% blood-alcohol test result. After the plaintiff won at trial following the denial of summary judgment, this Court upheld the verdict and refused to grant the officer qualified immunity. *Ciak v. Lasch*, No. 96-5400, 1997 WL 535781 (6th Cir. Aug. 28, 1997). However, there are a few additional factors which distinguish that case, especially the fact that the plaintiff was arrested despite two *prior* breathalyzer tests at the scene that returned results of 0.00% blood alcohol. *Id.* at *4.

caused Miller to inadvertently drive through the stop sign—there is a genuine issue of fact as to whether Wagester had probable cause to arrest Miller for reckless driving.

**(iii) Arrest for Minor in Possession.** — Finally, Wagester wrote Miller a criminal ticket for minor in possession of alcohol. We are unable to find any discussion or explanation in the record from the briefs, depositions, the police report, or the District Court opinion as to the basis for this charge. Thus, we cannot conclude that Deputy Wagester had probable cause to arrest Miller on that basis.

**(iv) Showing Malice.** — Having concluded that there is a genuine issue of material fact as to whether Wagester had probable cause to arrest Miller for all three criminal charges, the final element of malicious prosecution is that "the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice." *Walsh*, 689 N.W.2d at 516-17. In Michigan, "[w]hen a party is sued for malicious prosecution, a jury may infer malice from an absence of probable cause." *Friedman v. Dozorc*, 312 N.W.2d 585, 617 (Mich. 1981); *see also Dupuis v. Kemp*, No. 263880, 2006 WL 401125, *1 (Mich. Ct. App. Feb. 21, 2006) (stating "malice may be inferred from a lack of probable cause"). Thus, the questions of fact regarding probable cause extend to malice, at least for the purposes of summary judgment.

Moreover, as Miller notes in his brief, the fact that Wagester ordered Miller's blood to be retested for drugs after it came back negative for alcohol and all charges were dropped could also, along with other evidence, lead a jury to infer malice under a theory that Wagester was indeed trying to harass Miller.[6] (Pet. Br. at 41). *See Ciak v. Lasch*, No. 96-5400, 1997 WL 535781, *4 (6th Cir. Aug. 28, 1997) (Suggesting finding of malice because "a review of the record suggests that [the officer's] claim at trial that he suspected that [plaintiff] was impaired by drugs, rather than alcohol, was a

---

[6]The District Court rejected the argument that the request for additional testing could be used to support a claim for malicious prosecution "[b]ecause the additional retesting did not initiate criminal proceedings." Although the act of the request itself may not have been malicious prosecution for that reason, it could nonetheless constitute circumstantial evidence of malice for a malicious prosecution claim on other grounds.

disingenuous post-hoc attempt to justify the arrest. The evidence at the scene of the arrest and [the officer's] own statements and actions at the time of the arrest show that [the officer] had no such suspicion.").

## 2. Unlawful Seizure: Arrest

Miller alleges that Deputy Wagester arrested him in violation of his Fourth Amendment rights. Similarly to malicious prosecution, "in order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause. Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir. 2009) (quoting *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007) (internal citations omitted)). The District Court granted summary judgment to Deputy Wagester for this claim because it found that, under the facts and circumstances known to him, Wagester had probable cause to arrest Miller. For the reasons stated above, there is a genuine issue of material fact on this matter.

## 3. Unlawful Search and Seizure: Blood Test

Miller alleges that Deputy Wagester violated his Fourth Amendment rights by requesting that the lab test his blood sample for controlled substances after the first analysis came back negative for alcohol. Miller argues that Deputy Wagester obtained the search warrant in order to test for alcohol and that testing for anything other than alcohol exceeded the scope of the warrant. The District Court granted Wagester summary judgment because it concluded that the additional test did not exceed the scope of the warrant: in Michigan, drivers are guilty of Operating a Vehicle while Intoxicated—the charge listed on the search warrant—if they are intoxicated with alcohol, a controlled substance, or both. Mich. Comp. Laws § 257.625(1). Although Miller asks us to consider the "limiting and strict language contained within the four corners of the search warrant," (Pet. Br. at 31), he provides no argument challenging the District Court's conclusion. Although it seems troubling that Deputy Wagester stated in his deposition that he believed the search warrant only permitted testing for alcohol,

and that Wagester ordered the blood retested for controlled substances despite never previously indicating he believed Miller was under the influence of controlled substances, the search warrant on its face clearly authorizes samples to be tested for alcohol, or controlled substances, or both.  Thus, we affirm the grant of summary judgment for this claim.

### 4.  Excessive Force

Miller alleges that Deputy Wagester violated his constitutional rights by using excessive force.  Miller specifically complains about his exposure to cold weather during the stop, Deputy Wagester's conduct in effecting the arrest, and the tightness of the handcuffs.  Claims of excessive force are analyzed under an objective-reasonableness standard, which depends on the facts and circumstance of each case viewed from the perspective of a reasonable officer on the scene. *Graham v. Connor*, 490 U.S. 386, 395-96 (1989).  An officer making an investigative stop or arrest has "the right to use some degree of physical coercion or threat thereof to effect it." *Id*. at 396.  "The question we must ask is whether, under the totality of the circumstances, the officer's actions were objectively reasonable." *Fox v. DeSoto*, 489 F.3d 227, 236-37 (6th Cir. 2007) (citing *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001)).

The District Court granted summary judgment to Wagester on this claim because "Miller has failed to allege conduct on behalf of Deputy Wagester that amounts to excessive force."  We agree with respect to the allegations of unnecessary detention in freezing weather and the tightness of the handcuffs, but disagree with respect to Miller's allegation that he was kicked and thrown against Wagester's vehicle.

**(i) Unnecessary Detention in Freezing Weather.** — "[U]nnecessary detention in extreme temperatures . . . violates the Fourth Amendment's prohibitions on unreasonable searches and seizures." *Burchett v. Kiefer*, 310 F.3d 937, 945 (6th Cir. 2002).  Although there is disagreement as to exactly how long Miller was subjected to

the extremely cold weather,[7] as the District Court noted: "There are no allegations that Deputy Wagester left Miller in the cold longer than was necessary to conduct the field sobriety tests or that Deputy Wagester was not likewise exposed to the cold for the same amount of time." Miller claims that he was so cold that he was visually shaking and passed out. Indeed, the medical technician who drew Miller's blood observed him shaking. However, several factors weigh heavily against Miller's allegation of excessive force from exposure to cold weather: he had recently been at an outdoor event and helped a friend who had driven into a ditch, admits he never told Deputy Wagester he was cold while on the side of the road or elsewhere, indicated during the booking process that he did not need medical attention and described his present physical condition as good, and does not appear to have presented any notable symptoms during a medical evaluation a week later for hypothermia. Accordingly, we agree with the District Court that a jury could not reasonably find that Miller was subjected to "unnecessary detention in extreme temperatures." *Burchett*, 310 F.3d at 945.

**(ii) Failure to Loosen Handcuffs.** — The Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure. *Morrison v. Bd. of Tr. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009). This right was "clearly established" for qualified immunity purposes at the time of Miller's arrest. *Id.* at 401. In order for a handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he or she complained that the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced "some physical injury" resulting from the handcuffing. *Id.* (citing *Lyons v. City of Xenia*, 417 F.3d 565, 575-76 (6th Cir. 2005)).

The District Court properly concluded that Deputy Wagester did not use excessive force in handcuffing Miller because Miller did not complain about the handcuffs until they arrived at the jail, at which point they were removed. Moreover, Miller cannot provide a specific amount of time that it took Wagester to remove the

---

[7]Although Miller claimed in his deposition that he was outside of his vehicle for "At least 45 minutes," he told a health care provider about a week after the arrest that he estimated the time to be 20 minutes. Deputy Wagester stated in his deposition that Miller was outside for "six to eight minutes."

handcuffs after he first complained.  Thus, although Miller meets the first prong, it cannot be said that Wagester "ignored" his complaints.**8** *Cf. Morrison*, 583 F.3d at 402 (holding the second prong satisfied when officer denied request to loosen and stated he could place handcuffs on "as tight as he wanted to and that's how they were staying"). He also fails to satisfy the third prong:  although Miller stated in his deposition that he lost color in his hands for more than a day after the arrest and has a continuing inability to use his hands, these assertions are not supported by his medical records or the intake form he completed during his arrest.

**(iii) Slamming Miller against Vehicle.** — In his claim for excessive force, Miller alleges that Deputy Wagester spun him around, slammed him against his vehicle, and kicked his feet apart.  Miller admits that he was not "hurt" by this conduct.  The District Court granted summary judgment for Wagester by concluding, without citation to authority, that "[i]t is not objectively unreasonable for an officer to place an individual under arrest using force that does not cause harm."

This Court has made clear that a plaintiff may "allege use of excessive force even where the physical contact between the parties did not leave excessive marks or cause extensive physical damage." *Morrison*, 583 F.3d at 407 (quoting *Ingram v. City of Columbus*, 185 F.3d 579, 597 (6th Cir. 1999)); *see also Holmes v. City of Massillon,* 78 F.3d 1041, 1048 (6th Cir. 1996).  In determining whether there has been a violation of the Fourth Amendment, we consider not the "extent of the injury inflicted" but whether an officer subjects a detainee to "gratuitous violence." *Morrison*, 583 F.3d at 407 (citing *Pigram ex rel. Pigram v. Chaudoin*, 199 F. App'x. 509, 513 (6th Cir. 2006) (denying qualified immunity to an officer who slapped a suspect in the face because he was being unruly and had a "smart-ass mouth," despite the minimal use of force applied and the absence of any resulting injury)).

---

**8**In his brief and in the District Court below, Miller apparently maintains that an officer must "immediately" loosen handcuffs in response to a complaint that they are too tight, citing our decision in *Burchett v. Kiefer*, 310 F.3d 937 (6th Cir. 2002).  But although *Burchett* concluded that there had not been a constitutional violation because the response was immediate, it can hardly be construed to mean that a longer response is automatically a violation.  In any event, because he has provided no indication as to the length of Wagester's response time, we have no way of knowing that it was anything other than immediate.

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal citation omitted). The question whether force is excessive turns on the objective reasonableness of the officer's conduct under the circumstances. *Id.* at 397. The Supreme Court has provided three factors for courts to consider in evaluating an excessive force claim: the severity of the crime, whether the suspect posed an immediate threat to the safety of officers or others, and whether the suspect actively resisted arrest or attempted to evade arrest by flight. *Id.* at 396. Here, at least under Miller's account of the arrest, all three factors strongly weigh in favor of a valid claim for excessive force.

The facts of this case are analogous to *Minchella v. Bauman*, in which this Court reversed summary judgment for a police officer accused of using excessive force after a traffic stop. 72 F. App'x. 405 (6th Cir. 2003). The plaintiff was also grabbed, thrown into a police car, and was kicked in the leg, and the parties disputed the facts preceding the arrest: the plaintiff claimed she had done nothing wrong while the officer claimed she was speeding, did not stop immediately, was agitated, and threw her license and registration at him. *Id.* at 406. This Court held that there was a genuine issue of material fact as to whether the officer's actions were excessive. *Id.* at 409-10.

This Court has also found genuine issues of material fact to exist in other cases of alleged excessive force during arrest. *See Carpenter v. Bowling*, 276 F. App'x 423, 426-28 (6th Cir. 2008) (suspect thrown against van despite not resisting arrest); *Zantello v. Shelby Twp.*, 277 F. App'x. 570, 574 (6th Cir. 2008) (officers continued to use force against suspect involved in violent assault "even after they had full control of the scene and even after he cooperated with them"); *Lustig v. Mondeau*, 211 F. App'x 364, 369-71 (6th Cir. 2006) (officer twisting arm of woman accused of driving a watercraft while intoxicated despite not resisting); *Solomon v. Auburn Hills Police Dep't.,* 389 F.3d 167, 174 (6th Cir. 2004) (woman arrested for trespassing in movie theater kicked in legs and thrown against display case despite minor offense, posing no immediate threat, and not attempting to flee); *Burden v. Carroll*, 108 F. App'x. 291, 293-94 (6th Cir. 2004) (officer pushed belligerent suspect against brick wall after suspect had reportedly threatened

someone); *Bass v. Robinson*, 167 F.3d 1041 (6th Cir. 1999) (officer allegedly slammed suspect's head against tree after drug sale). *Cf. Dunn v. Matatall*, 549 F.3d 348, 354-55 (6th Cir. 2008) (not excessive force when suspect thrown out of car after attempting to drive away from police and apparently refused to exit vehicle); *Lockett v. Donnellon*, 38 F. App'x 289, 291-92 (6th Cir. 2002) (not excessive force when suspect pushed and pulled into car in rough matter where suspect was uncooperative and verbally abusive).

Miller's claim of excessive force admittedly comes close to the "scintilla of evidence" of excessive force this Court has previously found to be insufficient to survive summary judgment. *See, e.g.*, *Goodrich v. Everett*, 193 F. App'x. 551, 557 (6th Cir. 2006); *Gaddis ex rel Gaddis v. Redford Twp.*, 364 F.3d 763, 773-74 (6th Cir. 2004). However, we believe that a jury could reasonably find that slamming an arrestee into a vehicle constitutes excessive force when the offense is non-violent, the arrestee posed no immediate safety threat, and the arrestee had not attempted to escape and was not actively resisting. *Graham*, 490 U.S. at 396.

"Qualified immunity will often operate to protect officers from the sometimes hazy border between excessive and acceptable force." *Solomon*, 389 F.3d at 174 (internal quotations and citations omitted). An officer should be entitled to qualified immunity if he made an objectively reasonable mistake as to the amount of force that was necessary under the circumstances with which he was faced. *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002). The facts here, however, do not present one of those hazy cases. In the light of the precedent in this Circuit, a jury could reasonably find that the officer's alleged conduct violated Miller's rights.

**B. State Claims**

Plaintiff's state law claims include false arrest/false imprisonment, malicious prosecution, assault and battery, and gross negligence. Deputy Wagester claims that he is entitled to governmental immunity on these claims. With the exception of gross negligence, each one constitutes an intentional tort because they contain intent as an element. *Odom v. Wayne County*, 760 N.W.2d 217, 228 (Mich. 2008). To be entitled to governmental immunity for an intentional tort, Wagester must establish that he was

acting in the course of his employment and at least reasonably believed that he was acting within the scope of his authority, that his actions were discretionary in nature, and that he acted in good faith. *Id.* The only factor at issue here is "good faith," which is defined as "without malice." *Id.* at 225.

The District Court awarded summary judgment to Wagester on the state tort claims of false arrest/false imprisonment and malicious prosecution because it found that he had probable cause to arrest Miller, *Walsh*, 689 N.W.2d at 513-14, 517, and on the assault and battery claim because it is analogous to the excessive force claim in that Miller can only recover if Deputy Wagester's conduct was objectively unreasonable, which the District Court found not to be the case. *VanVorous v. Burmeister*, 687 N.W.2d 132, 142 (Mich. Ct. App. 2004). Because malice may be inferred from absence of probable cause, *Friedman v. Dozorc*, 312 N.W.2d 585, 617 (Mich. 1981), there are genuine questions of material fact with regard to both of these issues.

The District Court granted summary judgment on Miller's claim of gross negligence, which is based on Deputy Wagester's use of handcuffs and conduct while effecting the arrest. However, Michigan "has rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence." *VanVorous*, 687 N.W.2d at 143 (listing cases). Thus, Miller did not state a claim on which relief could be granted. The remaining basis for Miller's gross negligence claim is his exposure to cold weather during the field sobriety tests, but Miller has failed to demonstrate that Wagester was negligent in this respect for the reasons stated above. Thus, we affirm the District Court as to this claim.

### III. Municipal Liability

Finally, Miller asserts a § 1983 claim of municipal liability based on alleged Sanilac County policies and practices of failing to adequately train and supervise its officers. To succeed on a municipal liability claim, a plaintiff must establish that his or her constitutional rights were violated and that a policy or custom of the municipality was the "moving force" behind the deprivation of the plaintiff's rights. *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 606-07 (6th Cir. 2007) (*citing*

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  A systematic failure to train police officers adequately is a custom or policy which can lead to municipal liability. *Gregory v. City of Louisville*, 444 F.3d 725, 753 (6th Cir. 2006) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  "The inadequacy of police training only serves as a basis for § 1983 liability 'where the failure to train amounts to *deliberate indifference* to the rights of persons with whom the police come into contact.' " *Slusher v. Carson*, 540 F.3d 449, 457 (6th Cir. 2008) (quoting *Harris*, 489 U.S. at 388).  To establish deliberate indifference, the plaintiff "must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005).

The District Court granted summary judgment to Sanilac County after finding that Miller failed to establish a violation of his federal rights.  Although we disagree with this conclusion for the reasons stated above, we affirm the District Court as to the claim asserted against Sanilac County because Miller has not shown that a policy or custom was the moving force behind the alleged violations or that there was deliberate indifference based on prior instances of unconstitutional conduct.

## IV.  Conclusion

For the reasons stated above, we **REVERSE** the grant of summary judgment with respect to the federal claims of malicious prosecution for the *criminal* charges, unlawful arrest, and excessive force (for allegedly slamming Miller against the vehicle and kicking his legs, but not for exposure to cold temperatures or use of handcuffs), and the state claims of false arrest/false imprisonment, malicious prosecution, and assault and battery.  We **AFFIRM** the grant of summary judgment for all other claims, including malicious prosecution for the civil infractions, unlawful search and seizure for the second blood test, the state claim of gross negligence, and municipal liability against Sanilac County.

---

### CONCURRING IN PART AND DISSENTING IN PART

---

COOK, Circuit Judge, concurring in part and dissenting in part. I would affirm the district court's decision and, therefore, respectfully dissent from those portions of the majority opinion reversing the grant of summary judgment to Deputy Wagester.

I.

**A.     § 1983 Claims**

1. Unlawful Seizure:  Arrest[1]

*Reckless Driving*

Despite Miller's admission "that he ran a stop sign going approximately 30 miles per hour," the majority concludes that "icy road conditions—which could certainly have caused Miller to inadvertently drive through the stop sign"—created a genuine issue of fact as to whether probable cause existed for the arrest. Adherence to the proper probable cause inquiry leads me to disagree.

"In order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002). "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007) (quotation marks and citation omitted). Michigan law provides that "[a] person who drives a vehicle upon a highway . . . in willful or wanton disregard for the safety of persons or property is guilty of reckless driving," Mich. Comp. Laws § 257.626(1), and classifies reckless driving as an arrestable offense, § 764.15.

---

[1] My differing analysis calls for examining Miller's wrongful arrest claims before turning to malicious prosecution.

Miller's driving through a stop sign at 30 miles per hour supplied probable cause for his arrest. *See, e.g.*, *United States v. Miller*, 326 F. App'x 513, 516 (11th Cir. 2009) (police had probable cause to stop vehicle for reckless driving after observing plaintiff "drive recklessly and ignore a stop sign"); *United States v. Jackson*, 167 F. App'x 812, 813 (D.C. Cir. 2005) (police had probable cause to stop vehicle for reckless driving after observing plaintiff fail to stop at a stop sign, fail to signal when turning, and swerve to avoid oncoming traffic in an alley). The vehicle's speed is critical to this finding. If Miller skidded through the stop sign or traveled through the intersection at a greatly reduced speed, for example, the majority might justifiably find a genuine issue of material fact. But driving through an intersection at 30 miles per hour evinces wanton disregard for the safety of others. Indeed, rather than call into question the issue of probable cause, the icy road conditions favor the officer's judgment that Miller was driving too fast for the conditions.

### *Driving Under the Influence*[2]

Probable cause to arrest Miller for reckless driving precludes a wrongful arrest claim, even if Wagester lacked probable cause for the additional charges. *Lyons v. City of Xenia*, 417 F.3d 565, 573 (6th Cir. 2005); *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 761 (7th Cir. 2006). But because probable cause is a necessary element of malicious prosecution, I address the issue here.

The probable cause inquiry entails an examination of the totality of the circumstances "from a law enforcement officer's perspective." *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (en banc) (citations omitted). The determination hinges not on hindsight, but on the facts as perceived by a reasonable officer in Wagester's position when the stop and arrest occurred. Other circuits recognize that "[a plaintiff's] refusal to take a breathalyzer test, coupled with the smell of alcohol from the vehicle, g[i]ve[s] [officers] probable cause to arrest." *Miller v.*

---

[2]Michigan's minor in possession statute criminalizes the underage consumption or possession of alcoholic liquor. Mich. Comp. Laws § 436.1703(1). Thus, the same facts establishing probable cause for driving under the influence (which necessarily encompasses consumption) also suffice to show probable cause for minor in possession.

*Harget*, 458 F.3d 1251, 1260 (11th Cir. 2006); *see also Summers v. Utah*, 927 F.2d 1165, 1166 (10th Cir. 1991). Here, Miller drove recklessly, gave varying accounts of his whereabouts, failed all but one of the field sobriety tests,[3] and refused a breathalyzer. Evaluating the facts from Wagester's perspective, but in the light most favorable to Miller, sufficient facts supported the decision to arrest. *See Jolley v. Harvell*, 254 F. App'x 483, 488–89 (6th Cir. 2007).

## 2. Malicious Prosecution

While the elements of a federal malicious prosecution claim remain undefined in this circuit, our cases clearly establish a plaintiff's obligation to show, "at a minimum, the absence of probable cause to justify his arrest and prosecution." *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006) (citations, quotation marks, and editorial marks omitted). And, here, the circumstances offered the requisite probable cause to justify Miller's arrest and prosecution.

## 3. Excessive Force

I agree with my colleagues' conclusion that Miller failed to come forward with evidentiary support for his first two excessive force claims—unnecessary detention in freezing weather and failure to loosen handcuffs. I cannot agree, however, with the view they take on the third claim—slamming against the vehicle.

Drawing all inferences in Miller's favor, Wagester spun him around, "slammed" him against his vehicle, and kicked his feet apart—but caused no injury. Arrests effected by law enforcement officials on a daily basis could be described that same way. Indeed, this is why the Supreme Court counsels that "the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect

---

[3]The majority questions how "Miller could more specifically challenge . . . [his] . . . performance on [the] field sobriety tests," Maj. Op. at 7-8, and refuses to consider the tests for purposes of summary judgment. But, as the district court correctly noted, Miller never argued that he passed the field sobriety tests. Moreover, a variety of factors—including inclement weather—might cause a sober person to fail a sobriety test and prompt an officer to reasonably (but mistakenly) suspect intoxication. Although we must view the facts in the light most favorable to the plaintiff, Miller does not adequately put his failure of the sobriety tests in dispute.

it" and that "not every push or shove . . . violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation and quotation marks omitted).

Although a slam might constitute excessive force in some circumstances, it fails to rise to that level here. Miller's deposition testimony confirms this conclusion. According to Miller, as Wagester informed him that he was under arrest, the officer "turned [him] around and shoved [him] against [the car]." Miller does not claim that Wagester shoved him violently, maliciously, or gratuitously. *Cf. Burden v. Carroll*, 108 F. App'x 291, 293 (6th Cir. 2004) (officer violently shoved plaintiff into a brick wall with protrusions, causing significant injury). And when asked if Wagester's actions hurt him, Miller responded: "I mean, not really." Miller's "ambiguous description of the . . . shov[e] . . . he endured constitutes at best a scintilla of evidence, insufficient for a rational trier of fact to conclude that a reasonable officer would consider the force excessive." *Goodrich v. Everett*, 193 F. App'x 551, 557 (6th Cir. 2006). Because Miller fails to "allege a level of force or brutality that a reasonable officer would consider excessive," *id.*, the district court correctly granted Wagester qualified immunity.

**B.     State Claims**

As with Miller's federal claims, the existence of probable cause proves fatal to his state tort claims of false arrest/false imprisonment and malicious prosecution. Similarly, Miller's assault and battery claim mirrors his federal excessive force claim insofar as Miller can only recover if Wagester acted unreasonably—which he did not. The district court properly resolved Miller's state law claims.

II.

Wagester discharged his duties constitutionally and reasonably. Thus, I would affirm the district court's grant of summary judgment.