16 F.3d 1223
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
David ROSE, Defendant-Appellant.
 No. 93-5302.
 United States Court of Appeals, Sixth Circuit.
 Dec. 29, 1993.
 
 Before: NELSON and NORRIS, Circuit Judges, and HEYBURN, District Judge.*
 PER CURIAM.
 
 
 1
 This is an appeal from a conviction on cocaine and firearms charges. The issue presented is whether the seizure by the police of an automobile that proved to contain guns and drugs belonging to the defendant was "unreasonable" within the meaning of that term as used in the Fourth Amendment of the United States Constitution. Concluding that the seizure was not unreasonable, we shall affirm the conviction.
 
 
 2
 * On February 20, 1991, the defendant, David Rose, had dinner with his girlfriend, Rita White, at a restaurant in a shopping center in a suburb of Nashville, Tennessee. The couple had an argument in the course of which Mr. Rose grabbed Ms. White and struck her. The restaurant manager reported the incident to the local authorities by telephone.
 
 
 3
 Nashville Metropolitan Police Office Danny Driskell responded to the call and stopped Mr. Rose as he was about to drive out of the shopping center parking lot. Mr. Rose presented a restricted driver's license and admitted that he did not have the "restriction papers" that holders of such licenses are required to carry in order to drive legally. A radio check disclosed that Mr. Rose was a convicted felon with a long criminal record and was the subject of an outstanding warrant for driving under the influence of alcohol.
 
 
 4
 Officer Driskell placed Mr. Rose under arrest pursuant to the outstanding warrant and for driving without the necessary papers. Upon ascertaining that Ms. White (who had remained in the restaurant) was in fear of her life, Officer Driskell told Mr. Rose that he would also be booked for domestic violence.
 
 
 5
 Mr. Rose asked to be allowed to drive himself to the police station booking room in his own car. He told Officer Driskell that he had some very important papers and valuables in the vehicle and did not want to have any of his property lost; the implication was that Rose did not want the car to be left at the shopping center unattended.
 
 
 6
 The officer refused to let Mr. Rose drive, pointing out that it would be illegal for Rose to do so without an unrestricted license. Rose then handed his car keys to Officer Driskell and asked him to give the keys to Ms. White so that she could drive the vehicle home. The officer went back into the restaurant to see if Ms. White was up to such a task. After speaking with her, he decided that she was not; Ms. White appeared intoxicated, as the officer subsequently testified, and she seemed too upset to drive safely.
 
 
 7
 Officer Driskell then told Mr. Rose that the police would tow his car to a fenced-in and secured impound lot. Mr. Rose became upset at this point, and he threatened to sue the officer and the police department if anything were lost or stolen from the car.
 
 
 8
 General Order 83-2 of the Nashville Metropolitan Police Department, which deals with the subject of vehicle impoundment, says that an arrested person's vehicle shall not be impounded unless absolutely necessary to expedite law enforcement/investigative action. If the owner/operator of a vehicle can make his own arrangements for custody of the vehicle, the order goes on to say, or if the vehicle can be safely parked and locked, one of these alternatives will be followed and a prescribed form (Form 233) will be completed and signed by the owner/operator. The form contains sections in which an owner/operator can make a written request either that the vehicle be left at the scene or that it be "remanded" to a named custodian. The form includes a release of liability for loss or damage to the vehicle and its contents. Officer Driskell did not mention Form 233 to Mr. Rose, and did not press him to say whether he wanted the car left at the shopping center despite his concern for the safety of his papers and valuables.
 
 
 9
 Following the determination that neither Mr. Rose nor Ms. White would be allowed to drive the car away from the parking lot, and having decided to proceed with impoundment rather than leaving the car unattended, Officer Driskell made an inventory of the contents of the car. It is undisputed that departmental guidelines call for such an inventory whenever a vehicle is to be impounded.
 
 
 10
 In the course of making his inventory, the officer discovered a number of bags of cocaine, two firearms, and notebooks thought to be related to criminal activity. The discovery of these materials led to a six-count indictment being returned against Mr. Rose by a federal grand jury.
 
 
 11
 Mr. Rose filed a motion to suppress the articles taken from the car, and the district court (Higgins, J.) held an evidentiary hearing on the motion. After considering the evidence presented at the hearing, and after weighing the credibility of the two witnesses who testified, Officer Driskell and Mr. Rose, the court entered an order denying the suppression motion. The order was supported by a memorandum containing detailed findings of fact and an extensive discussion of the applicable law.
 
 
 12
 Reserving the right to appellate review of the denial of his motion to suppress, Mr. Rose subsequently entered a conditional plea of guilty to three of the six counts against him. (See Rule 11(a)(2), Fed.R.Crim.P., which authorizes such a procedure.) The remaining counts were dismissed. The district court entered a judgment of conviction in February of 1993, and this appeal followed.
 
 II
 
 13
 We must accept Judge Higgins' factual findings as true except insofar as they may be shown to have been clearly erroneous. United States v. Garcia, 866 F.2d 147, 151 (6th Cir.1989); United States v. Coleman, 628 F.2d 961, 963 (6th Cir.1980). The reasonableness of the seizure and search of the car, on the other hand, is ultimately a question of law; as such, it is subject to de novo review. See United States v. Corral, 970 F.2d 719, 723 (10th Cir.1992); United States v. Colin, 928 F.2d 676, 677-78 (5th Cir.1991).
 
 
 14
 None of the factual findings made by Judge Higgins is clearly erroneous. Mr. Rose does not challenge the right of the police to conduct an inventory search of a properly impounded car, moreover, so the only question left is whether Officer Driskell acted reasonably or unreasonably, in a constitutional sense, when he chose to seize the car.
 
 
 15
 Where police officers who inventory the contents of an automobile for impoundment purposes follow standardized procedures and do not act in bad faith or for the sole purpose of investigating criminal conduct, it is well established that the search can pass constitutional muster notwithstanding the absence of a search warrant based on probable cause. See Colorado v. Bertine, 479 U.S. 367, 371-73 (1987), and the cases there cited. The fact that a driver has not been invited to make his own arrangements for the safekeeping of his property is not dispositive of the constitutional issue:
 
 
 16
 "[T]he real question is not what 'could have been achieved,' but whether the Fourth Amendment requires such steps....
 
 
 17
 "The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means." Id. at 374, quoting Illinois v. Lafayette, 462 U.S. 640, 647 (1983) (emphasis in original).
 
 
 18
 Under the facts of the case at bar, we do not believe that it was unreasonable for Officer Driskell to have decided on impoundment without first having invited Mr. Rose to sign a Form 233. Given Mr. Rose's expression of concern about the security of the valuables in his car, it was not unreasonable for the officer to decide against leaving the car at the shopping center for an indeterminate period of time. The alternative arrangements proposed by Mr. Rose were rejected for perfectly legitimate reasons, and we believe that the officer was justified in concluding that impoundment was necessary. The policy embodied in General Order 1983-2 rules out impoundment if acceptable alternative arrangements are available, but not otherwise--and only where there is an acceptable alternative to impoundment does the General Order require completion of Form 233.
 
 
 19
 The General Order was not drafted to deal specifically with the nuances of every conceivable fact pattern. As part of what the Supreme Court has called "community caretaking functions," and in the interests of public safety, police officers frequently assume custody of automobiles. South Dakota v. Opperman, 428 U.S. 364, 368 (1976), quoting Cady v. Dombrowski, 413 U.S. 433, 441 (1973). The factual circumstances will vary from case to case, and as the district court pointed out, quoting United States v. Rodriguez-Morales, 929 F.2d 780, 787 (1st Cir.1991), cert. denied, 112 S.Ct. 868 (1992), "[t]he police cannot sensibly be expected to have developed, in advance, standard protocols running the entire gamut of possible eventualities." The Nashville Metropolitan Police protocol permits impoundment of automobiles, in general terms, when circumstances require it. Officer Driskell's application of the protocol was not patently unreasonable, and the district court was not obligated to find, on this record, that the officer decided on impoundment solely because he wanted to search for evidence of criminal conduct.
 
 
 20
 Finding no error in the denial of Mr. Rose's motion to suppress, we AFFIRM the conviction.
 
 
 
 *
 The Honorable John G. Heyburn II, United States District Judge for the Western District of Kentucky, sitting by designation