**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0719n.06

No. 09-3665

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Nov 18, 2010**
LEONARD GREEN, Clerk

REID MACHINERY INC.;                                )
HOWARD DOUGLAS ROBINSON,           )
                                                                    )
    **Plaintiffs-Appellants,**                  )          ON APPEAL FROM THE
                                                                    )          UNITED STATES DISTRICT
v.                                                                  )          COURT FOR THE NORTHERN
                                                                    )          DISTRICT OF OHIO
NICHOLAS LANZER; JEFFEREY             )
ROMES; DENNIS M. BELL; KEVIN          )
A. BECK,                                                     )          **O P I N I O N**
                                                                    )
    **Defendants-Appellees.**                    )
_____)

Before:  MOORE, SUTTON, and FRIEDMAN, Circuit Judges.[*]

**KAREN NELSON MOORE, Circuit Judge.**  Plaintiffs Reid Machinery Inc. and Howard

Douglas Robinson appeal the district court's grant of summary judgment on their claims brought

under 42 U.S.C. § 1983, in favor of defendants Nicholas Lanzer, Jefferey Romes, Dennis Bell, and

Kevin Beck.  The plaintiffs argue that the defendants violated their constitutional rights under the

Fourth Amendment and the Due Process Clause of the Fourteenth Amendment when Williams

County Deputies Lanzer and Romes stopped a truck owned by Reid Machinery and driven by

Robinson, issued Robinson citations under Ohio law regulating the weight and size of vehicles and

loads, and escorted the truck to the Williams County Highway Department garage pursuant to an

_____

[*]The Honorable Daniel M. Friedman, Circuit Judge of the United States Court of Appeals
for the Federal Circuit, sitting by designation.

unwritten policy of Williams County Engineer Bell and Williams County Sheriff Beck. Because

Deputies Lanzer and Romes neither violated the plaintiffs' Fourth Amendment rights nor caused the

alleged due-process violations, and because Bell and Beck's escort policy did not violate Reid

Machinery's Fourth Amendment and due-process rights, we **AFFIRM** the district court's grant of

summary judgment in favor of the defendants.

## I. BACKGROUND[1]

On April 26, 2007, Robinson was traveling east on U.S. Route 20 in a truck owned by Reid

Machinery. Reid Machinery had obtained a special hauling permit ("SHP") for the truck to weigh

up to 165,000 pounds, including up to 95,000 pounds for its load (a crane), for transit from Pioneer,

Ohio, to the Michigan/Ohio state line. Robinson was stopped by defendants Lanzer and Romes, who

are in the "weight enforcement division" of the Williams County Sheriff's Office, at 11:16 a.m. in

Williams County, Ohio. The deputies asked Robinson to see the registration, proof of insurance,

permit, and his driver's license. After approximately twenty-five minutes, the deputies asked

Robinson to move the truck to a side road so that it could be weighed and measured. The truck

weighed 140,850 pounds.

After weighing, measuring, and otherwise inspecting the truck and reviewing the SHP, the

deputies concluded that the permit did not accurately describe the load, that the load was improperly

---

[1]We include only an abbreviated version of the undisputed facts. The district court's opinion
provides a more detailed account of the factual background, as well as a general overview of Ohio's
laws and regulations restricting the weight and size of vehicles and loads. *See Reid Mach., Inc. v.
Lanzer*, 614 F. Supp. 2d 849, 854–58 (N.D. Ohio 2009).

secured, and that the vehicle/load exceeded the legal width. Because of these alleged permit violations, the deputies concluded that the permit was void.[2] The deputies issued Robinson a traffic citation for four violations of the Ohio Revised Code: § 5577.04 (weight violation)[3]; § 4513.02 (unsafe-vehicle violation related to the load securement); § 5577.05 (width violation); and § 4513.34 (special-hauling-permit violation related to the load description).[4] Appendix ("App.") at 1080 (citation); *id.* at 1124 (statement of Romes and Lanzer).

Pursuant to an unwritten Williams County policy—decided collectively at a meeting attended by defendants Bell and Beck, as well as City of Bryan attorney Rhonda Fisher and Deputies Lanzer and Romes—vehicles over 120,000 pounds are escorted to the county's Highway Department garage facility, where they must remain until a new permit is issued. After waiting to receive routing instructions from the Ohio Department of Transportation ("ODOT"), Deputies Lanzer and Romes departed the scene at 3:47 p.m. and escorted the truck, driven by Robinson, to the Williams County garage. On April 27, 2007, Reid Machinery sought a replacement permit from ODOT. A

---

[2]Under the limitations of the SHP listed on an attached form called the "OS-1A," "[f]ailure to comply with the SHP provisions or the general provisions (OS-1A), . . . or whenever the SHP does not adequately describe the vehicle/load, shall render the SHP null and void . . . ." Appendix ("App.") at 1095 (OS-1A form).

[3]The truck weighed less than the amount permitted in its SHP, but because the deputies concluded that the other violations rendered the permit void, they cited Robinson for the truck being 60,850 pounds over the 80,000 pound weight limit for trucks without a permit under Ohio Revised Code § 5577.04(E).

[4]The criminal traffic case against Robinson was ultimately dismissed based on "failure of the speedy trial requirements." App. at 1066 (Pls.' Response to Interrogatories at 14).

replacement SHP was issued at 12:39 p.m. on April 30, 2007, with the effective date of May 1, 2007. Ed Reid, owner of Reid Machinery, went to the Williams County garage on May 1, 2007, and departed with the truck.

## II. ANALYSIS

Reid Machinery and Robinson allege claims against defendants Lanzer and Romes, and Reid Machinery alleges claims against defendants Bell and Beck, all under 42 U.S.C. § 1983. "'To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.'" *Miller v. Sanilac Cnty.*, 606 F.3d 240, 247 (6th Cir. 2010) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)). Reid Machinery and Robinson allege that Deputies Lanzer and Romes violated their rights under the Fourth Amendment, and Reid Machinery alleges that Deputies Lanzer and Romes violated its rights under the Due Process Clause of the Fourteenth Amendment. Reid Machinery also alleges that county officials Bell and Beck violated its rights under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment.[5] The district court granted summary judgment in favor of the defendants on all of the plaintiffs' § 1983 claims.

---

[5]We assume, without deciding, for the purposes of this opinion that Reid Machinery Inc. has Fourth Amendment and due-process rights. 10 WILLIAM MEADE FLETCHER ET AL., FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 4957.10 (perm. ed., rev. vol. 2010) ("[C]orporations do possess some Fourth Amendment rights against unreasonable searches and seizures . . . ." (citing *G.M. Leasing Corp. v. United States*, 429 U.S. 388 (1977))); 14A *id.* § 6930.50 (perm. ed., rev. vol. 2008) ("A corporation is a 'person' within the meaning of the due process clause." (citing *Minneapolis & St. Louis Ry. Co. v. Beckwith*, 129 U.S. 26 (1889))).

## A.  Standard of Review

We "review[] the district court's grant of summary judgment *de novo*." *Id.* at 246.  Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c)(2).  "We must view all the facts and the inferences in the light most favorable to the nonmoving party and uphold a grant of summary judgment only where the record as a whole could not lead a rational trier of fact to find for the non[]moving party." *Miller*, 606 F.3d at 247.

## B.  Defendants Lanzer and Romes

Reid Machinery and Robinson sued Deputies Lanzer and Romes in their individual capacities, and the deputies argue that they are entitled to qualified immunity.  "Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (internal quotation marks omitted).  Qualified immunity is a two-prong inquiry:  (1) whether the plaintiff has shown a violation of a constitutional right, and (2) whether the constitutional right was "clearly established" at the time of the violation. *Pearson v. Callahan*, --- U.S. ---, 129 S. Ct. 808, 815–16 (2009).  This court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818.

**1. Fourth Amendment**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. CONST. amend. IV. This court has concluded that, under the Fourth Amendment, police officers may stop a vehicle if they have reasonable suspicion of an ongoing crime. *United States v. Hughes*, 606 F.3d 311, 316 n.8 (6th Cir. 2010). Reasonable suspicion requires less proof than probable cause, but it must be "'more than an inchoate and unparticularized suspicion or hunch.'" *United States v. Garrido*, 467 F.3d 971, 981 (6th Cir. 2006) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). We "'must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing.'" *Id.* (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). Officers are permitted "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Id.* (internal quotation marks omitted).

The plaintiffs first argue that the deputies needed probable cause to effectuate the stop and detain the truck because the stop was not investigatory but rather "the first step in executing a plan calculated to detain and impound the vehicle at the County Engineers' Garage." Appellants Br. at 32. They rely on a phone call between Deputy Romes and a Pioneer, Ohio police officer that occurred in the morning before the deputies stopped Robinson to argue that the deputies had already decided, at the time of the stop, to impound it at the garage. This argument fails, however, because "the permissibility of a traffic stop turns not on subjective intent, but rather on objective fact."

6

*Hughes*, 606 F.3d at 315 (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)). The court "'may not look at the officer's ordinary routine, or his conduct *or conversations that occurred before* or after the stop to invalidate the stop as pretextual.'" *Id.* at 317 (emphasis added) (quoting *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) (en banc), *cert. denied*, 513 U.S. 828 (1994)).

The plaintiffs also argue that the deputies have offered what they term "*post hoc* rationalizations" to justify the stop of the truck, including that the deputies had conducted research on the truck's SHP prior to initiating the stop. Appellants Br. at 23, 35. The plaintiffs, however, offer no evidence to contradict the evidence in the record that the deputies, experienced in weight enforcement, observed the truck impeding traffic and observed that it had a visible load, bulging tires, and sluggish movement. App. at 1124 (statement of Romes and Lanzer); *id.* at 1126 (citation report). The deputies' on-the-scene observations alone gave them reasonable suspicion that the truck was traveling in violation of Ohio law, and thus justified the stop of the truck. *Cf. Brierley v. Schoenfeld*, 781 F.2d 838, 841 (10th Cir. 1986) (concluding that the officer, experienced in truck enforcement, had reasonable suspicion that the truck was overweight "based upon his observation of the squatty rear-axle tires").

We must also consider whether the scope and duration of the stop violated the plaintiffs' Fourth Amendment rights. *United States v. Bell*, 555 F.3d 535, 541 (6th Cir.), *cert. denied*, 129 S. Ct. 2887 (2009). After stopping the truck, reviewing the SHP, and briefly inspecting the truck, the deputies had reason to believe that the load was not secured properly and that the load's width exceeded the width stated in the permit—potential violations that would render the SHP void. These

particularized and objective facts continued to support the deputies' original suspicion that the truck

and load were in violation of Ohio's weight and size laws, and justified the continued detention of

the truck and Robinson for further investigation.[6]  Upon review of the record, we conclude that the

deputies' investigation was "reasonably related in scope to [the] circumstances justifying the original

[stop]."  *Bell*, 555 F.3d at 541 (internal quotation marks omitted).  It was also reasonable for the

deputies to ask Robinson to move the truck to a nearby side road where it would be safer to weigh

and measure more accurately the truck.  *See Florida v. Royer*, 460 U.S. 491, 504 (1983) ("[T]here

are undoubtedly reasons of safety and security that would justify moving a suspect from one location

to another during an investigatory detention . . . ."); *United States v. Perez*, 440 F.3d 363, 372 (6th

Cir.) ("The investigative means used should also be the least intrusive means *reasonably available*

to verify or dispel the officer's suspicions in a short period of time." (emphasis added) (citing *Royer*,

460 U.S. at 500)), *cert. denied*, 549 U.S. 1014 (2006); *cf. V-1 Oil Co. v. Means*, 94 F.3d 1420,

1427–28 (10th Cir. 1996) (concluding that it was reasonable for the officer "to order the truck to the

port of entry three to five miles away for a safety inspection . . . because it was safer than a roadside

inspection").  In light of the duration, the stop was no "longer than reasonably necessary for the

[deputies] to complete the purpose of the stop," *Bell*, 555 F.3d at 541, and the deputies were not

"dilatory in their investigation."[7]  *United States v. Sharpe*, 470 U.S. 675, 687–88 (1985).

---

[6]This is not a case in which the original purpose of the stop was completed yet the deputies continued to detain the vehicle.  *See, e.g.*, *Garrido*, 467 F.3d at 981.

[7]The four-and-a-half-hour duration of the stop in this case exemplifies that the stop of a large commercial truck for suspected weight or load violations is much different than the typical

Finally, the deputies' decision to follow the county's policy of escorting superload trucks to the county garage and keeping them there until a valid permit is obtained also does not violate the Fourth Amendment.[8] *See United States v. Kimes*, 246 F.3d 800, 805 (6th Cir. 2001) ("Discretion as to impoundment is permissible 'so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.'" (quoting *Colorado v. Bertine*, 479 U.S. 367, 375–76 (1987)); "The Fourth Amendment permits impoundment decisions . . . that are objectively justifiable . . . regardless of an officer's subjective intent." (citing *Whren*, 517 U.S. at 812)), *cert. denied*, 534 U.S. 1085 (2002). For these reasons, we agree with the district court's conclusion that the deputies did not violate the plaintiffs' Fourth Amendment rights, and therefore were entitled to qualified immunity.

---

automobile stop for traffic violations. We note that it may be more appropriate to analyze the warrantless stop, inspection, and weighing of commercial trucks under the pervasively regulated industries doctrine set forth by the Supreme Court in *New York v. Burger*, 482 U.S. 691, 702 (1987). *See United States v. Dominguez-Prieto*, 923 F.2d 464, 465 (6th Cir.) (applying *Burger* to Tennessee's commercial trucking inspection program), *cert. denied*, 500 U.S. 936 (1991); *see also United States v. Steed*, 548 F.3d 961, 967 n.5 (11th Cir. 2008) (collecting cases concluding that commercial trucking is a pervasively regulated industry); *United States v. Delgado*, 545 F.3d 1195, 1201–02 (9th Cir. 2008) (same), *cert. denied*, 129 S. Ct. 1383 (2009). Because the parties did not raise the issue, however, we decline to consider whether Ohio's weight and size laws provide a constitutionally adequate substitute for a warrant under *Burger*.

[8]The plaintiffs also allege that the deputies told Robinson that he needed a Williams County permit and a court order to have the truck released. The district court concluded that these allegations are insufficient to support a Fourth Amendment claim. *Reid Mach., Inc.*, 614 F. Supp. 2d at 864. The plaintiffs fail to develop any argumentation relating to these allegations before this court, and therefore we deem the issue waived. *La Quinta Corp. v. Heartland Props. LLC*, 603 F.3d 327, 338 n.5 (6th Cir. 2010).

### 2. Due Process

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Reid Machinery alleges both procedural and substantive due-process claims. With respect to procedural due process, Reid Machinery argues that there is no appeal or review process of the deputies' decision to void the SHP, and that the process to apply for a replacement permit does not satisfy due process. With respect to substantive due process, Reid Machinery argues that (1) the conditions contained in the SHP were "unlawfully formulated," Appellants Br. at 38–41; (2) the Director of ODOT unlawfully imposed an additional penalty by including special conditions to the permit; (3) the special conditions were unlawful because the Director did not generate the conditions; and (4) the conditions subject those holding permits to arbitrary enforcement.

We need not address the merits of Reid Machinery's due-process claims, however, because it cannot show that the alleged procedural and substantive due-process violations were caused by actions of the defendant deputies. The district court noted that the "[p]laintiffs use 'substantive due process' as an umbrella under which they group several *attacks on features of the Ohio system of weight and dimension restrictions, and the Special Hauling Permits that are issued as a part of that system*." *Reid Mach., Inc.*, 614 F. Supp. 2d at 865–66 (emphasis added). In other words, the due-process complaints concern the Ohio permitting scheme. Reid Machinery does not tie its complaints about the permitting system to actions taken by defendants Lanzer and Romes. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[T]o establish personal liability in a § 1983 action, it is enough to show that

the official, acting under color of state law, caused the deprivation of a federal right." (emphasis and internal quotation marks omitted)); *McKinley v. City of Mansfield*, 404 F.3d 418, 438 (6th Cir. 2005) ("'[A] public official is liable under § 1983 only if he *causes* the plaintiff to be subjected to a deprivation of his constitutional rights.'" (alteration in original) (emphasis added) (quoting *Baker v. McCollan*, 443 U.S. 137, 142 (1979))), *cert. denied*, 546 U.S. 1090 (2006).

The only potential connection between the deputies' actions and Reid Machinery's due-process complaints is the deputies' "decision to revoke a permit." Appellants Br. at 24. Reid Machinery argues that the deputies "subjected [plaintiffs] to enforcement of a patently unlawful criteria [sic] . . . ." *Id.* at 48. An officer's action taken "in good-faith reliance on a presumptively valid [law] is valid regardless of a subsequent judicial determination of its unconstitutionality." *Risbridger v. Connelly*, 275 F.3d 565, 573 (6th Cir. 2002) (citing *Michigan v. DeFillippo*, 443 U.S. 31, 33 (1979)); *see also Leonard v. Robinson*, 477 F.3d 347, 366–67 (6th Cir. 2007) (Sutton, J., concurring in part and dissenting in part) (collecting cases). Even if we assume, *arguendo*, that the Ohio permitting scheme violates the Reid Machinery's due-process rights, the deputies have immunity because "we cannot conclude that a reasonable officer would have known that [enforcement of the SHP scheme] in this situation would violate due process." *Risbridger*, 275 F.3d at 573. Accordingly, the district court did not err in granting summary judgment in favor of defendants Lanzer and Romes on Reid Machinery's § 1983 claim of due-process violations.

## C. Defendants Bell and Beck

Reid Machinery sued county officers Bell and Beck in their official capacities, and therefore the suit is essentially against the governmental entity, Williams County. *See Everson v. Leis*, 556 F.3d 484, 493 n.3 (6th Cir. 2009); *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003). "To succeed on a municipal liability claim, a plaintiff must establish that his or her constitutional rights were violated and that a policy or custom of the municipality was the 'moving force' behind the deprivation of the plaintiff's rights." *Miller*, 606 F.3d at 254–55 (quoting *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 606–07 (6th Cir. 2007), *cert. denied*, 129 S. Ct. 44 (2008)). Reid Machinery alleges claims under 42 U.S.C. § 1983 for violations of the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment as a result of the Williams County policy to escort vehicles over 120,000 pounds to the county garage.[9]

### 1. Fourth Amendment

Reid Machinery argues that requiring the truck to be moved to and kept at the county garage was an unreasonable seizure. The Supreme Court, however, has approved of law enforcement's removal of vehicles from the roadside for public safety:

---

[9]Reid Machinery also claims that the policy unreasonably interferes with commerce. It made general claims relating to the Commerce Clause in its memorandum opposing summary judgment. The complaint, however, does not plead a claim under the Commerce Clause, and the district court did not address the commerce arguments in its opinion. Because "[a] non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion," *Tucker v. Union of Needletrades, Indus., & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (internal quotation marks omitted), we do not address Reid Machinery's commerce arguments.

No. 09-3665
*Reid Machinery Inc. et al. v. Lanzer et al.*

> In the interests of public safety and as part of what the Court has called "community caretaking functions," automobiles are frequently taken into police custody. . . . To permit the uninterrupted flow of traffic . . . disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities. . . . The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.

*South Dakota v. Opperman*, 428 U.S. 364, 368–69 (1976) (footnote and citation omitted) (quoting

*Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)).  The Court also "accord[s] deference to police

caretaking procedures designed to secure and protect vehicles and their contents within police

custody." *Bertine*, 479 U.S. at 372.  Reid Machinery in fact admits "the traditional police authority

to impound motor vehicles."[10]  Appellants Br. at 62.

The state of Ohio prohibits trucks in excess of the legal weight from moving without a SHP.

OHIO REV. CODE ANN. §§ 4513.33, 4513.34, 5577.02.  Law enforcement, therefore, has a

community caretaking responsibility to ensure that trucks unable to continue their travel due to

permit violations are protected and secured, and do not "threaten[] public safety and convenience"

if they remain on the roadside. *Opperman*, 428 U.S. at 369.  Pursuant to this responsibility, Williams

County determined that its garage is a safe and secure location for superload trucks to remain until

they can legally continue their travel, and thus county deputies are instructed to remove superload

trucks in violation of the permitting laws to this location.  Reid Machinery argues that "there are

---

[10]Reid Machinery admits this authority in making various arguments that the escort policy violates or conflicts with Ohio's permitting laws.  Appellants Br. at 56–57, 60–65.  We remind the plaintiff that it brought claims under § 1983 for alleged violations of its federal rights under the Fourth and Fourteenth Amendment, not for violations of Ohio law.

considerably less onerous methods of inducing compliance with Ohio's weigh[t] laws" than escorting all superload trucks to the county garage. Appellants Br. at 58. The Fourth Amendment, however, requires only reasonableness, and "[t]he reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative less intrusive means." *Bertine*, 479 U.S. at 374 (internal quotation marks omitted). We cannot conclude that it is unreasonable for the county to determine, as a matter of policy, that superload trucks threaten public safety by remaining on the roadside and that the county garage is a safe and secure location to which deputies should remove the trucks. *Cf. id.* at 374–75 (reaffirming, in the context of vehicle inventory searches, that "[a] single familiar standard is essential to guide police officers" (alteration in original) (internal quotation marks omitted)). That there were closer locations allegedly suitable for the truck to be directed does not make the policy unreasonable; the policy "was not drafted to deal specifically with the nuances of every conceivable fact pattern." *United States v. Rose*, 16 F.3d 1223, 1993 WL 539248, at *3 (6th Cir. Dec. 29, 1993) (unpublished table decision), *cert. denied*, 511 U.S. 1085 (1994). "The factual circumstances will vary from case to case, and . . . '[t]he police cannot sensibly be expected to have developed, in advance, standard protocols running the entire gamut of possible eventualities.'" *Id.* at *3 (second alteration in original) (citing *United States v. Rodriguez-Morales*, 929 F.2d 780, 787 (1st Cir. 1991), *cert. denied*, 502 U.S. 1030 (1992)). Thus, we conclude that the county's escort policy, requiring Reid Machinery to move its truck to the county garage and to maintain the vehicle there until it obtained a replacement permit, was reasonable and did not violate Reid Machinery's Fourth Amendment rights.

14

## 2. Due Process

Reid Machinery alleges both procedural and substantive due-process claims against Bell and Beck with respect to the escort policy. Procedurally, Reid Machinery argues that the lack of a post-deprivation hearing to challenge the truck's "impoundment" violates due process. Appellants Br. at 29, 59. In the district court, however, Reid Machinery raised the lack of a post-deprivation hearing only with respect to the deputies' decision that the SHP was void; it did not raise the issue with respect to the escort policy. Accordingly, the district court did not address the lack of a post-deprivation hearing to challenge the escort policy in its decision. *See Reid Mach., Inc.*, 614 F. Supp. 2d at 864–65. As a general rule, we decline to consider arguments not presented in the first instance to the district court. *See Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1461 (6th Cir.), *cert. denied*, 488 U.S. 880 (1988).

Substantively, Reid Machinery argues that the escort policy is "arbitrary" because "[t]here is no rational justification for treating overweight vehicles weighing in excess of 120,000 pounds differently from those weighing less than 120,000 pounds." Appellants Br. at 27–28, 50–52. Substantive due process "guarantees 'protection of the individual against arbitrary action of government.'" *Jones v. Byrnes*, 585 F.3d 971, 976 (6th Cir. 2009) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)). "'[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense . . . .'" *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 535 (6th Cir. 2008) (second alteration in original) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998)). The conduct must be such that "shocks the conscience." *Lewis*, 523 U.S. at 846.

Contrary to Reid Machinery's arguments, we believe that it is rational to have additional safety concerns about larger trucks stopped on the side of a road, and it is not arbitrary to draw the line at 120,000 pounds—a line drawn by ODOT in its permitting regulations. The policy clearly does not rise to the level of egregious conduct necessary to prove a substantive due-process violation.

### III. CONCLUSION

Because we conclude that defendants Lanzer and Romes did not violate the plaintiffs' Fourth Amendment rights, that defendants Lanzer and Romes did not cause the alleged due-process violations, and that the escort policy of defendants Bell and Beck did not violate Reid Machinery's Fourth Amendment and due-process rights, we **AFFIRM** the district court's grant of summary judgment in favor of the defendants on the plaintiffs' § 1983 claims.