NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0226n.06
Filed: May 2, 2008

No. 07-3100

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

LADAWNYA K. CARPENTER et al.,     )
     )
   Plaintiffs-Appellees,     )
     )
v.     )  ON APPEAL FROM THE UNITED
     )  STATES DISTRICT COURT FOR THE
LESLIE WAYNE BOWLING et al.,     )  SOUTHERN DISTRICT OF OHIO
     )
   Defendants-Appellants.     )

Before: BATCHELDER and SUTTON, Circuit Judges; and BARZILAY, Judge.[*]

SUTTON, Circuit Judge. Three City of Franklin (Ohio) police officers argue that the district court erred in denying their motion for summary judgment with respect to Charles Combs' unlawful-arrest and unlawful-entry claims and Ladawnya Carpenter's excessive-force claim. We affirm.

I.

In July 2002, an Ohio court entered a consent agreement between Sarah Kirby and Charles Combs concerning the custody of their ten-month-old son, Tyler. The agreement gave Combs custody of Tyler from Sunday at 6:00 p.m. to Friday at 6:00 p.m., and it gave Kirby custody from

---

[*] The Honorable Judith M. Barzilay, Judge of the United States Court of International Trade, sitting by designation.

Friday at 6:00 p.m. to Sunday at 6:00 p.m. All exchanges of Tyler, the agreement said, would "take place at [the] Franklin police department." JA 58.

On at least two occasions, Combs failed to bring Tyler to the police department on Friday evening, prompting Kirby to file a motion to hold Combs in contempt of court for violating the consent agreement. On August 16, when Combs again failed to bring Tyler to the station, Kirby told the police that she "had filed for contempt of court" against Combs, that Combs "was supposed to bring Tyler to the station" and "that there was a warrant for [Combs]." JA 201. The officers responded by going to Combs' apartment.

Combs answered the officers' knock on his door, and, after a brief discussion, the officers arrested him for violating the consent agreement. The arrest, according to all parties, occurred outside Combs' apartment. LaDawnya Carpenter, Combs' sister, who (along with Combs' mother and girlfriend) was visiting Combs at the time, told the officers that she had temporary custody papers at her house that would exonerate her brother. The officers told Carpenter to get the papers.

When Carpenter returned without the custody papers, she called Combs' attorney to determine whether the officers could arrest him without a warrant. After Carpenter handed him the phone, Officer Russell Whitman spoke to Combs' attorney, who informed him that the consent agreement had not been modified. Whitman also spoke with a representative of the Warren County Children's Services, who told him that Kirby "had the right to take the child." JA 79. Whitman then

took Tyler from Carpenter, carried him out of the apartment and gave him to Kirby, who was waiting in the parking lot.

According to at least one of the officers, Carpenter "was screaming profanities" and "throwing objects about in the apartment" as "the officers were leaving the apartment with the child." JA 62. Carpenter denies these allegations. JA 125. Carpenter followed the officers into the parking lot and ultimately was arrested for disorderly conduct, a charge later dismissed, as was the charge against Combs.

In August 2003, Combs, Tyler and Carpenter filed a § 1983 action against the City of Franklin, Kirby and Officers Bowling, Whitman and Diekman in Ohio state court. The defendants removed the action to federal court, and the officers moved for summary judgment on qualified-immunity grounds. The district court granted the motion with respect to the unlawful-arrest claim, holding that the officers had probable cause to arrest Combs. It denied the motion with respect to the unlawful-entry claim, reasoning in part that exigent circumstances did not justify the entry. And it denied the motion with respect to the excessive-force claim, reasoning that disputes of material fact remained over Carpenter's conduct and the officers' explanations for using force. Officers Bowling, Whitman and Diekman filed this interlocutory appeal. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

II.

To overcome a defendant's claim of qualified immunity, a plaintiff must establish (1) that the defendant violated a "constitutional right" and (2) that the right "was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). We must decide the first question, the Supreme Court has instructed, before we reach the second one. *Id.* at 200–01.

A.

The officers start, oddly enough, by arguing that "[t]he trial court erred by not granting the officers qualified immunity for the warrantless arrest claim of Charles Combs." Br. at 1. That is odd because, as we have just explained, the district court *granted* summary judgment *for the officers* on this claim. Since the officers cannot appeal a victory and since Combs has not appealed this loss, that is the end of the matter.

B.

The officers next challenge the district court's conclusion that a triable issue of fact exists over Combs' unlawful-entry claim. We reject that challenge. While the officers say that Combs consented to their waiting in his apartment after his arrest and while consent is an acceptable basis for entering a person's home without a warrant, *see Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990), the summary-judgment record establishes a dispute over whether the officers indeed had consent to enter the home. Carpenter's and Combs' affidavits, for example, both say that the officers "forced their way into the apartment." JA 165, 184. Even though it remains unclear what cognizable harm Combs suffered as a result of the officers' entry—as he did not appeal the district court's conclusions

that his arrest and the seizure of Tyler were lawful and as the entry seemingly benefitted him by allowing his sister time to contest his arrest—we affirm the district court's denial of the officers' claim for summary judgment on Combs' unlawful-entry claim.

C.

The officers next contest the district court's excessive-force ruling, arguing that the court should have rejected Carpenter's claim as a matter of law. Under the Fourth (and Fourteenth) Amendment, individuals have a right to be free of excessive force when police arrest or seize them. *See Lyons v. City of Xenia*, 417 F.3d 565, 575 (6th Cir. 2005). Whether excessive force exists turns on the objective reasonableness of the officer's conduct in view of the circumstances facing the officer, an inquiry that accounts for "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* (internal quotation marks omitted and alterations in original); *see also Graham v. Connor*, 490 U.S. 386, 394–96 (1989).

When we construe the facts in Carpenter's favor, as we must, here is what happened: After the officers removed Tyler from the apartment and gave him to Kirby, Carpenter waited a moment, then went outside. Upon emerging from the building, Carpenter saw Kirby 30 to 40 feet away and shouted, "remember, Sunday at 6:00," reminding Kirby of her obligation to return Tyler to Combs on Sunday evening. JA 126. Carpenter insists she never cursed at Kirby and "wasn't threatening [her]." JA 128.

"Before [Carpenter] could even get [her] breath back [from shouting at Kirby], Officer Bowling had ahold of [her], screaming that he had had it with [her and] was sick of [her]." *Id.* After grabbing Carpenter from behind by both arms, Bowling "proceeded to shove [her] down the sidewalk," JA 129, and "body slammed [her] into a van parked in front of the apartments," JA 181. All the while, Carpenter was telling Bowling that he did not "have to do this" because she would voluntarily "turn around and let [him] arrest [her]." JA 129. After pinning Carpenter against the van, Bowling "jerk[ed] hard on [her] arms," JA 132, and Officer Diekman "stuck his knee in [Carpenter's] back" and "grabbed [Carpenter's] other shoulder," JA 131. The officers then "repeatedly crushed [Carpenter] against the van while pulling back on both [of her] arms," making "a dent in the van." JA 186. "[N]ot sure what [the officers were] doing"—trying to handcuff her or injure her—Carpenter told them that "they were hurting [her]" and "continuously sa[id] please don't do this. I will stand up. I will let you handcuff me. I will let you arrest me. You don't have to do this to me." JA 131–32. Carpenter thus "wasn't fighting [the officers]" and "wasn't resisting arrest," though she admits that she lifted her head several times to plead for mercy. JA 132. Carpenter felt her "shoulder pop[]" while the officers jerked her arms, JA 131, and suffered injuries to her arms and shoulders during the arrest, requiring an emergency-room visit on the day after the arrest and periodic medical treatment and physical therapy since then.

As measured by the three factors identified in *Lyons* and *Graham*, these record-supported allegations create a triable issue of fact over whether the officers used excessive force. *First*, the charge at issue was disorderly conduct, and "[t]he crime of disorderly conduct" generally "is not a

violent or serious crime, and this fact weighs in favor of using less force in arresting [someone for such conduct]." *Thacker v. Lawrence County*, 182 F. App'x 464, 472 (6th Cir. May 17, 2006). *Second*, nothing suggests that Carpenter posed a threat to the officers, and although Carpenter raised her voice at Kirby (who was 30 or 40 feet away) she "wasn't threatening her," never cursed at her, was "not angry" with her and never made a move toward Kirby. JA 126, 128. *Third*, nothing suggests that Carpenter posed a risk of flight. "At all times," Carpenter "told Bowling that [she] was not going to resist him," and yet he still "was hurting [her]." JA 186. In view of the non-threatening nature of Carpenter's offense, the absence of any resistance by Carpenter and the absence of any threat to anyone, a jury crediting these fact-supported allegations could find that the officers used constitutionally excessive force.

The district court also correctly determined that case law clearly established this constitutional claim. *See St. John v. Hickey*, 411 F.3d 762, 772, 774 (6th Cir. 2005) ("[W]e conclude the right of a nonviolent [and non-resistant] arrestee to be free from unnecessary pain knowingly inflicted during an arrest [for disorderly conduct] was clearly established as of November 9, 2000."); *see also Minchella v. Bauman*, 72 F. App'x 405, 408–09 (6th Cir. Aug. 13, 2003) (denying summary judgment to officers on an excessive-force claim—relating to an arrest in 1999—because the plaintiff's "crime was not severe," the plaintiff "posed no threat to the Officers or the community" and the evidence was "inconclusive as to whether [the plaintiff] was 'slammed' into the car, and . . . as to whether [the plaintiff] physically resisted the arrest"); *Davis v. Yovella*, No. 95-5415, 1997 WL 159363, at *5–6 (6th Cir. Apr. 2, 1997) (denying qualified immunity to an officer on an

excessive-force claim because "the charges against [the plaintiff] . . . were not serious," "there [was] no evidence that [the plaintiff] posed a risk to the officers or anyone present," "the record show[ed] that he did not resist arrest" and the plaintiff "sought medical attention for pain in his neck and back").

The officers complain that this conclusion fails to appreciate the risk of escalation they faced—as Carpenter was visibly upset about the situation with her brother, had voiced her frustrations to the officers and had previously been accused of harassing Kirby (several months earlier). Yet virtually any arrest of an individual by the police poses a risk of resistance and escalation. The question is whether that risk was real at the time the officers used force and, more pertinently, whether a triable issue of fact exists over that risk. Carpenter was 30 or 40 feet from Kirby and claims not to have done anything more than remind Kirby to return Tyler on Sunday. A jury could thus reasonably conclude, if it credited these factual allegations, that the police had no basis for immediately grabbing, shoving, body slamming and repeatedly crushing Carpenter against a van to prevent the situation from escalating. Even if we were to grant the officers' premise that they had a reasonable basis for fearing that the situation might escalate, moreover, that would not necessarily justify repeatedly crushing Carpenter against a van while jerking back hard on her arms—all in the context of arresting her for a relatively minor and non-threatening crime, one for which she "[a]t all times" did not resist the officers (save for raising her head to ask them to stop).

The officers also contend that the district court should have ruled for them as a matter of law because Carpenter's injuries were either *de minimis* (temporary scrapes and red marks) or pre-

existing (her alleged shoulder injuries). But the record does not unequivocally establish either point. Carpenter went to the emergency room on the day after her arrest, complaining of shoulder pain and bruising, and she has "actively receiv[ed] medical treatment for the injuries caused by the Franklin police officers." JA 186. While Carpenter previously had surgery on her left shoulder, that shoulder was "back to normal" by 1995 or 1996, well before her arrest. JA 107.

The officers add that Sergeant Whitman played no role in the arrest and indeed that Carpenter did not even allege that he participated in Carpenter's arrest. Both contentions fail to account for Whitman's affidavit, in which he admitted that he "assisted Officer Bowling [in] handcuff[ing] Carpenter" and in which he "den[ied] Plaintiffs' allegations that [he] pushed or slammed Carpenter into a van." JA 80. The second amended complaint, as well as other evidence in the record, shows that Carpenter did implicate Whitman in her claim. *See* JA 14 (alleging that "Bowling, *Whitman* [and] Diekman" arrested Carpenter "with unreasonable and excessive force") (emphasis added); JA 186 (Carpenter's affidavit indicating that "Officer Bowling and the *two* other Franklin Police officers forcibly pushed [her] into the side of a van parked in the parking lot and made a dent in the van with [her] body") (emphasis added).

The resolution of Carpenter's excessive-force claim in the end turns on several genuine issues of material fact, including at a minimum these: Was Carpenter walking toward, cursing at or otherwise threatening Kirby at the time of her arrest? Did the officers repeatedly body slam or crush Carpenter against the van and jerk back unreasonably hard on her arms? And did Carpenter resist

the arrest or the officers' attempt to handcuff her? "[W]hen the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury, the jury becomes the final arbiter of a claim of immunity." *Bouggess v. Mattingly*, 482 F.3d 886, 888 (6th Cir. 2007) (internal quotation marks and alteration omitted).

III.

For these reasons, we affirm.