FILED

*Oct 07, 2011*

LEONARD GREEN, Clerk

File Name: 11a0705n.06

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

No. 10-1050

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ROBERT BOZUNG, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| OFFICER TRAVIS RAWSON, OFFICER | ) | WESTERN DISTRICT OF MICHIGAN |
| JOHN WILSON, and THE CHARTER | ) | |
| TOWNSHIP OF DEWITT | ) | |
| | ) | |
| Defendant-Appellees. | ) | |

Before: BOGGS and KETHLEDGE, Circuit Judges; and COLLIER, Chief District Judge.[*]

**CURTIS L. COLLIER, Chief District Judge**.  Plaintiff-Appellant Robert Bozung

("Bozung") appeals an order of the district court granting a motion for summary judgment in favor

of Defendant-Appellees Travis Rawson ("Officer Rawson"), John Wilson ("Officer Wilson") and

the Charter Township of DeWitt (or the "Township") in regards to Bozung's federal 42 U.S.C. §

1983 claims.  As previously stipulated by the parties, all claims against Officer Wilson on appeal

have been dismissed.

For the reasons set forth below, we AFFIRM the district court's judgment.

---

[*]The Honorable Curtis L. Collier, Chief United States District Judge for the Eastern District
of Tennessee, sitting by designation.

## I.  Relevant Facts/Procedural History

### A.        Factual Background

On June 6, 2007, Bozung was returning from a trip to a local grocery store in Lansing, Michigan.  Bozung was fifty-four (54) years old and had health issues arising from a stroke he suffered at age twenty-eight (28).  He had also suffered from a fractured ankle and had a hip replacement due to a bone deficiency.

One of Bozung's neighbors had asked him to give her a ride to buy groceries; however, Bozung explained to her that he could not drive because his license was suspended.  As a result, the neighbor suggested that Bozung allow a friend of hers to drive his truck.  Subsequently, the three of them - Bozung, his neighbor, and his neighbor's friend - drove to the grocery store.

As the three approached Bozung's apartment complex upon their return, Officer Rawson of the DeWitt Township Police Department stopped Bozung's vehicle because Officer Rawson considered the rosary hanging from Bozung's rear-view mirror to be a vision obstruction.  The unknown driver of Bozung's vehicle stopped the vehicle in the middle of the street and fled the scene.  Officer Rawson pursued the individual in his patrol car and called for back up, but he was unable to apprehend the individual.  When he returned to the truck, he observed Bozung, who had moved over into the driver's seat, slowly driving the vehicle into the parking lot of the apartment

complex. According to Officer Rawson, he ordered Bozung to stop the vehicle; Bozung, however, claims Officer Rawson did not say anything to him nor did he motion for Bozung to stop the vehicle.

Once Officer Rawson approached the truck, he made contact with Bozung and his neighbor. He asked them to identify the fleeing driver, but both claimed they did not know him. In Officer Rawson's opinion, Bozung was obviously intoxicated. He smelled of alcohol, later registered a .18% blood alcohol level, and had urinated himself. Officer Rawson confirmed with dispatch that Bozung was the owner of the truck. He also ran a LEIN check for outstanding warrants. Bozung did have a misdemeanor warrant for failure to appear in a local court. Once Officer Rawson advised Bozung there was a warrant for his arrest, he ordered Bozung to get out of the truck and informed him that he was under arrest. It is at this point that Bozung's and Defendant-Appellees's versions of events differ greatly.

### 1. Bozung's Version of Events

According to Bozung, he exited the truck and complied with Officer Rawson's instructions to face the truck. He then placed his hands on the bed of his truck. At that time, Officer Rawson asked Bozung to spread his legs. Although Bozung states he told Officer Rawson that he was disabled and could not physically comply with the orders quickly, Bozung states Officer Rawson began kicking the inside of Bozung's legs. Bozung also asserts he told Officer Rawson his age, and he told him that he had a total right hip-replacement and had plate and screws in his right ankle. In

Bozung's view, because he was not moving quickly enough, Officer Rawson told him they could handle the situation "the easy way or the hard way." Then, despite Bozung's protests, Officer Rawson grabbed one of Bozung's arms and brought Bozung down on to the pavement or asphalt. Bozung contends "he was thrown to the ground almost immediately after advising the officer of his handicap." In addition, he states Officer Rawson failed to advise him as to why he was being arrested, and Officer Rawson did not ask him to place his hands or arms behind his back before he was thrown to the ground. According to Bozung, his interaction with Officer Rawson, prior to being taken down to the ground, lasted approximately two to three minutes.

Once Bozung was on the ground, Officer Rawson pulled Bozung's arms behind his back to handcuff him. Bozung claims he asked Officer Rawson to loosen the handcuffs because they were too tight. However, Officer Rawson refused to do so.

At some point, Officer John Wilson, a public safety officer at the Capitol Region Airport Authority, arrived at the scene. Bozung suggests Officer Wilson was involved in throwing Bozung to the ground, and he specifically alleges Officer Wilson put his foot on Bozung's neck while he was lying, face-down, on the pavement. Still, Bozung admits he could not see Officer Wilson while he was lying face-down on the ground. Bozung also alleges Officer Rawson had his knee in the center of Bozung's back. As a result of these interactions, Bozung suffered from lacerations to his face, a broken thumb, and permanent spinal cord injuries.

- 4 -

In response to the Defendant-Appellees' motions for summary judgment, Bozung presented the deposition testimonies of two witnesses to corroborate parts of his story. James Leggions ("Leggions"), one of Bozung's neighbors, testified he saw the events unfold as the driver fled from Bozung's truck. He later saw Bozung get out of his vehicle. To him, Bozung appeared to be holding onto the back of his truck to keep his balance. However, he did not hear Bozung say anything to the officers, and he could not generally understand what the officers said to Bozung, except he thought Officer Rawson ordered Bozung to stay inside the truck. Nonetheless, he testified it was clear Bozung was having trouble walking, and in his opinion, Officer Rawson "slammed" Bozung to the ground because Bozung would not give the identity of the driver. According to Leggions, it was Officer Rawson who placed his foot somewhere on Bozung's neck.

Melanie Harris ("Harris"), who was supposedly Bozung's girlfriend at the time of the incident, testified that she saw Officer Rawson kicking Bozung's legs apart when Bozung first got out of his truck. She also states she heard Bozung asking the officer to stop because he was disabled. In addition, Harris contends other individuals in the forming crowd, including herself, shouted at Officer Rawson to tell him that Bozung was "handicapped." Despite their protests, Officer Rawson told Bozung he must "want this done the hard way," and he twisted Bozung's arm and slammed him to the ground. According to her testimony, it was the second officer, Officer Wilson, who placed his foot on the upper part of Bozung's back. Like Leggions, she believed Officer Rawson threw Bozung to the ground immediately after Bozung informed him of his disabilities.

As a result of these events, Bozung claims he "suffered lacerations to the face which required stitches[,] . . . [h]is thumb was broken[,] . . . [and] [t]he handcuffs cut his hand, leaving permanent marks." Bozung also contends he suffered more serious injuries. In the three weeks following his arrest, "he began to lose the use of his arms and had trouble walking. He experienced numbness from the back of his neck, between the shoulders, working down both arms, then down his legs. An MRI revealed cervical cord contusion."

### 2. Officer Rawson's Version of Events

According to Officer Rawson, when he ordered Bozung to get out of his vehicle, Bozung "walked on his own volition along the side of it." Although he asked Bozung to spread his legs, Officer Rawson contends he did not use his foot to kick Bozung's legs apart, and he contends Bozung never informed him of any disabilities. Indeed, Officer Rawson asserts there was no indication that Bozung was physically unable to comply with the orders or that he was disabled. At the time, Bozung did not have a disability sticker on his license plate or a disability tag hanging from his rearview mirror. He also did not park in a parking spot designated for disabled drivers.

Officer Rawson then ordered Bozung to place his hands behind his back to be handcuffed, and he gave him multiple opportunities to comply with the order over the course of thirty seconds. Bozung allegedly refused and gripped the bed of the truck. Nonetheless, Officer Rawson concedes Bozung stated, "wait, wait," or "I am, I am" in response to Officer Rawson's commands. Still,

Officer Rawson asserts Bozung did not provide any explanation as to why he could not put his hands behind his back to be handcuffed. After unsuccessfully trying a "muscling technique" to release Bozung's grip on the truck, Officer Rawson believed "further action was warranted," even though he would not characterize Bozung's non-compliance as active resistence.

At this point, Officer Rawson decided to employ a technique called a "straight arm bar takedown." This is a "soft empty hand control technique." However, when Officer Rawson grabbed Bozung's right hand, it appeared to him that Bozung was pulling away from him. Once Bozung was on the ground, Officer Wilson, who Officer Rawson noticed for the first time, assisted Officer Rawson in handcuffing Bozung.

At this time, Officer Rawson admits he may have had his knee on Bozung's shoulder blade, but this was done to help secure the handcuffs. After Bozung was handcuffed, he was assisted to his feet by the officers and placed in Officer Rawson's patrol car. Because Officer Rawson noticed Bozung had a small cut above his eye and an injury to his thumb, Bozung was transported to the hospital for treatment. Bozung was released from the hospital after a few hours.

### 3. Officer Wilson's Version of Events

Officer Wilson was on duty at the Capitol Region Airport on June 6, 2007. He heard the transmission from Officer Rawson stating he was in pursuit of a fleeing suspect and needed assistance.

When he arrived at the scene, Officer Wilson observed a crowd forming outside of the apartment complex. He then saw Bozung standing outside of his truck, and he heard Officer Rawson inform Bozung of the outstanding warrant for his arrest. Although Officer Wilson did not hear Bozung respond to this information, he saw Bozung walking, on his own volition, to the rear end of Bozung's truck. There, Bozung grabbed onto and held the bed of the truck.

When Officer Rawson ordered Bozung to place his hands behind his back, Bozung responded, "I am, I am." At no point did Officer Wilson hear Bozung explain to Officer Rawson that he was disabled, nor did Bozung ever make such statement to Officer Wilson. Instead, it appeared to Officer Wilson that Bozung was being noncompliant by continuing to hold onto the bed of the truck. Finally, after giving Bozung multiple opportunities to place his hands behind his back, Officer Rawson grabbed Bozung's arm to pry him away from the truck.

It appeared to Officer Wilson that once Officer Rawson freed Bozung's arm, Bozung tried to pull away from Officer Rawson. Unsure as to whether Bozung was attempting to flee, Officer Wilson grabbed Bozung's other arm in an effort to assist. As a result of Officer Rawson's straight-arm bar takedown, all three of the men went to the ground.

While Bozung was on the ground, Officer Wilson claims he crouched alongside Bozung in order to guide one of Bozung's arms behind his back so Officer Rawson could handcuff Bozung. At no point did he place his foot on Bozung's neck.

### B.    Procedural History

Bozung filed a complaint in the Western District of Michigan on April 11, 2008. The complaint alleged Officer Rawson, Officer Wilson, and the Charter Township of DeWitt violated Bozung's civil rights pursuant to 42 U.S.C. § 1983. Specifically, Bozung alleged Officer Rawson and Officer Wilson used unreasonable and excessive force in effectuating his arrest. Plaintiff then contended the Township failed to train its officers in the proper use of force and failed to train its officers to properly accommodate individuals with disabilities. Bozung's three remaining counts were brought under state law. He alleged the officers's conduct constituted gross negligence. He also asserted claims for assault and battery against the officers. Finally, Bozung brought a claim against all three of the defendants for violating the Michigan Persons with Disabilities Civil Rights Act.

In response to Bozung's complaint, Officer Wilson, Officer Rawson, and the Township filed motions for summary judgment. The district court granted in part and denied without prejudice in part Officer Wilson's motion, dismissing the federal law claims against Officer Wilson. The district court also granted in part and denied in part Officer Rawson and the Township's motion for summary judgment. All federal claims were dismissed against them as well. Finally, because the Court had dismissed all federal claims against all of the defendants, it declined to exercise supplemental jurisdiction over Bozung's state law claims.

On Bozung's § 1983 claims, the district court found Bozung had not "established the actions of the officers were unreasonable under the totality of the circumstances." *Bozung v. Rawson*, No. 1:08-cv-339, 2009 WL 2413624, at *6 (W.D. Mich. Aug. 4, 2009). Although the court considered the facts in a light most favorable to Bozung, it found summary judgment was warranted. As to Officer Rawson, the court found he acted reasonably when he forced Bozung to comply through his straight-arm bar takedown. To support this finding, the court cited the following facts: "(1) when [Officer Rawson] attempted to stop [Bozung's] vehicle, the driver of the vehicle had fled the scene; (2) [Bozung], the owner of the vehicle, [had] a warrant for his arrest; and (3) neither the vehicle nor [Bozung] had been searched." *Id.*(internal citations omitted). The court also credited Officer Rawson's and Officer Wilson's testimony that Bozung had been given a number of opportunities to place his hands behind his back, and he failed to comply. In addition, Bozung failed to explain why he was unable to do so. *Id.*

As to Officer Wilson, the district court found Bozung's allegations were totally contradicted by the record. *Id.* at *7. Indeed, Bozung did not see who placed a foot on his neck, and none of the witnesses saw Officer Wilson do so.

Next, the district court found that even if the officers made a mistake, they were entitled to qualified immunity. *Id.* According to that court, any mistake made was reasonable, and Bozung failed to demonstrate that the officers had violated a clearly established right. *Id.* at *8, 9. Because

the district court found no individual defendant violated Bozung's constitutional rights, it also dismissed the federal claims against the Township. *Id.* at *9.

As a result of the district court's rulings, Bozung filed a motion for reconsideration. *Bozung v. Rawson*, No. 1:09-cv-339, 2009 WL 5149917 (W.D. Mich. Dec. 16, 2009). That motion was denied. Bozung now appeals the district court's decision, and he moves this Court to reverse the district court's grant of summary judgment in favor of Officer Rawson and the Township.

## II. Standard of Review

Because Bozung appeals the district court's grant of summary judgment, this Court must review *de novo* the district court's ruling. *Alspaugh v. McConnell*, 643 F.3d 162, 168 (6th Cir. 2011). Summary judgment is proper "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.,* 253 F.3d 900, 907 (6th Cir. 2001). Here, Bozung alleges the district court disregarded or discredited his version of events. However, "[c]onstruing the facts on summary judgment in the light most favorable to the non-moving party usually means

adopting the plaintiff's version of the facts." *Coble v. City of White House, Tenn.*, 634 F.3d 865, 868 (6th Cir. 2011). On the other hand, if plaintiff's version of events "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In addition, to survive a motion for summary judgment, "the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2, 3 (E.D. Tenn. Nov. 4, 2009) (explaining the Court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of the case, the movant can meet its burden by pointing out such failure to the Court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonable find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return

a verdict in favor of the non-movant based on the record, the Court should enter summary judgment.

*Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### III.  Analysis

#### A.    Officer Rawson

To prevail on his 42 U.S.C. § 1983 claim against Officer Rawson, Bozung must show that "a person acting under color of state law deprived [him] of a right secured by the Constitution or laws of the United States." *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006).  Here, Bozung alleges two distinct instances of excessive force, which is prohibited under the Fourth Amendment. *Slusher v. Carson*, 540 F.3d 449, 454 (6th Cir. 2008).  First, he alleges either Officer Rawson or Officer Wilson, or both, threw him to the ground as he was standing by the truck.  Second, he alleges once he was on the ground, one or both of the officers placed their knee or foot on his spinal cord.

"A claim of excessive force under the Fourth Amendment requires that a plaintiff demonstrate that a seizure occurred, and that the force used in effecting the seizure was objectively unreasonable." *Rodriguez v. Passinault*, 637 F.3d 675, 680 (6th Cir. 2011).  Whether a constitutional violation based on excessive force occurred "depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007) (citing *Graham v. Connor*, 490 U.S. 386, 395-96 (1989)).  In making its determination, the Court should "pay particular attention to 'the

severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Schreiber v. Moe*, 596 F.3d 323, 332 (6th Cir. 2010) (citing *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001)). This is not an "exhaustive list," and the inquiry ultimately turns on whether the seizure was reasonable under the "totality of the circumstances." *Slusher*, 540 F.3d at 455.

In addition, "[e]ach defendant's liability must be assessed individually based on his own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). Here, Bozung must show Officer Rawson "(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Id.* (citing *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).

According to Bozung, his version of events leading to his arrest support a finding that Officer Rawson used excessive force and acted unreasonably under the totality of circumstances. Specifically, Bozung alleges Officer Rawson slammed him to the ground without first giving him any instructions to place his hands behind his back. Bozung contends that although he was attempting to obey Officer Rawson and explain his limitations, Officer Rawson acted without provocation anyway. In addition, Bozung states Officer Rawson placed his knee or foot on Bozung's back, contributing to Bozung's spinal cord injuries. Although Bozung's version of events differ from that of Officer Rawson, the Court finds Bozung has not established a genuine issue of material fact regarding whether Officer Rawson used excessive force.

Indeed, considering the facts in a light most favorable to Bozung, it is clear it was reasonable for Officer Rawson to employ the straight-arm bar takedown technique to neutralize Bozung and to handcuff Bozung. *See Slusher,* 540 F.3d at 455 (explaining that although the Court should evaluate the decision to use force "from the perspective of an objective officer," the facts must still be viewed in a light most favorable to the plaintiff). When Officer Rawson asked Bozung to step out of his vehicle, he had very limited knowledge about Bozung. He knew Bozung had been drinking, he knew the driver of Bozung's vehicle had fled the scene, and he knew there was a warrant for Bozung's arrest. Here, the record unequivocally shows Bozung was being arrested on a misdemeanor offense. Indeed, he was not being arrested for a "violent or serious crime, and this fact weighs in favor of using less force in arresting someone for such conduct." *Carpenter v. Bowling*, 276 F. App'x 423, 426 (6th Cir. 2008) (citing *Thacker v. Lawrence County*, 182 F. App'x 464, 472 (6th Cir. 2006)) (internal brackets and citations omitted). However, neither Bozung nor Officer Rawson has offered evidence to show at what point Officer Rawson became aware of the fact Bozung's arrest warrant was for a misdemeanor offense (*see* Appellant Brief at 50, n.13).

Next, it was not clear to Officer Rawson, at the time of the incident, whether Bozung posed an immediate threat to him. Although there is no evidence to suggest Bozung possessed a weapon or made verbal or physical threats to the officers, s*ee, e.g., Meirthew v. Amore*, 417 F. App'x 494, 497 (6th Cir. 2011), the record indicates the officers did not have an opportunity to search Bozung or his vehicle prior to employing the straight-arm bar takedown technique. In addition, it may have

- 15 -

been "difficult for the officers to judge [Bozung's] intentions" given the facts mentioned above. *See, e.g.*, *Wysong v. City of Heath*, 260 F. App'x 848, 855 (6th Cir. 2008). Although the evidence indicates "Bozung was cooperative and was not boisterous, combative, or disrespectful," there was a growing crowd forming at the scene, and Officer Rawson needed to be concerned about his safety and the safety of others.

Finally, in the context of this case, the most important *Graham* factor is whether Bozung was resisting arrest by not complying with Officer Rawson's orders to place his hands behind his back prior to the takedown. Although Bozung argues on appeal he does not recall Officer Rawson asking him to place his hands behind his back, he conceded before the district court in his response in opposition to the motions to dismiss that he had been told to place his hands behind his back. (District Court Record No. 65) ("Both defendant officers admit that Bozung responded to Rawson's command to place his hands behind his back as saying "wait, wait," and "I am, I am," which is consistent with [Bozung's] claim that he never refused to place his hands behind his back, but rather simply needed more time to comply"). In addition, during his deposition testimony, Bozung states two to three minutes passed between the time he walked around from the back of his truck until the time Officer Rawson employed the straight-arm bar technique. The Court finds, in light of Bozung's concession before the district court and the amount of time Bozung gripped the bed of his truck, there was a sufficient amount of time for Bozung to comply with the officer's request to put his hands behind his back.

Finally, regarding whether Officer Rawson used excessive force while Bozung was on the ground, it is clear Bozung has not demonstrated that there is a genuine issue of material fact. *See, e.g., Goodrich v. Everett*, 193 F. App'x 551, 556 (6th Cir. 2006). Bozung alleges Officer Rawson put his knee on Bozung's back. "Taking the evidence in light most favorable to [Bozung], the kneeing . . . occurred not when [Bozung] was neutralized, but while the officers were handcuffing him." *Id.*; *cf. Harris v. City of Circleville*, 583 F.3d 356, 367 (6th Cir. 2009) (explaining that excessive force on a suspect who has been restrained and placed in handcuffs is unconstitutional). Therefore, such action was objectively reasonable.

**B.     The Township**

The district court properly found the Township was also entitled to summary judgment because "no individual defendant violated [Bozung's] rights." *Bozung*, 2009 WL 2413624, at *9. "To succeed on a municipal liability claim, a plaintiff must establish that his or her constitutional rights were violated and that a policy or custom of the municipality was the 'moving force' behind the deprivation of the plaintiff's rights." *Miller v. Sanilac Cnty*, 606 F.3d 240, 254- 55 (6th Cir. 2010). Because this Court finds Officer Rawson did not use excessive force in violation of Bozung's Fourth Amendment rights, the Township cannot be held liable.

## IV.  Conclusion

For these reasons, we AFFIRM the decision of the district court.

BOGGS, Circuit Judge, dissenting.    Because I believe there are factual disputes that go to the heart of whether the force employed by Officer Rawson in handcuffing Bozung was reasonable, I cannot join the majority opinion.  Viewing the facts in the light most favorable to Bozung, Officer Rawson's conduct was objectively unreasonable and violated a clearly established constitutional right.  I would therefore reverse the grant of summary judgment for Rawson and remand for further proceedings.

Rawson is entitled to summary judgment if he did not violate Bozung's constitutional right to be free from excessive force.  As the majority correctly explains, the reasonableness of arresting officers' use of force depends on the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers, and whether he is actively resisting arrest or attempting to evade arrest by flight.  *Graham v. Connor*, 490 U.S. 386, 394 (1989).  "Authorities must be allowed 'to graduate their response to the demands of any particular situation.'"  *United States v. Montoya de Hernandez*, 473 U.S. 531, 542 (1985) (quoting *United States v. Place*, 462 U.S. 696, 709 n.10 (1983)).  Law enforcement surely has an interest in securing a suspect.  If an individual suspected of a minor crime puts up even a low level of resistance to arrest, he may be subjected to some force.  *Wysong v. City of Heath*, 260 F.  App'x 848, 854–55 (6th Cir. 2008).

Our case law makes it clear, however, that there is no government interest in tackling someone who is compliant and not attempting to flee.  *See Pershell v. Cook*, 2011 WL 2728137, at *5 (6th Cir.  July 13, 2011) (knocking suspect to the ground was unreasonable when suspect "did

not resist arrest or pose an immediate danger to officers"); *Kijowski v. City of Niles*, 372 F. App'x 595, 600 (6th Cir. 2010) (use of Taser against suspect presenting no risk of harm unreasonable); *Lawler v. City of Taylor*, 268 F. App'x 384, 386–87 (6th Cir. 2008) (officer's "use of force in throwing [suspect] to the floor was disproportionate to any threat he faced," given that suspect had merely insulted officer and "raised his left arm slightly"); *Smoak v. Hall*, 460 F.3d 768, 784 (6th Cir. 2006) (unreasonable to tackle cuffed and compliant suspect); *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 174 (6th Cir. 2004) (attempting leg sweep and shoving plaintiff against wall unreasonable when plaintiff was complying with the officers' demands); *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988) (unreasonable to strike unresisting suspect).

Although the true version of what happened between Bozung and the officers is certainly disputed, on summary judgment the facts must be viewed in the light most favorable to Bozung. In my view, Bozung has alleged facts and provided evidence sufficient to justify the conclusion that there is a genuine issue of material fact as to whether Rawson violated his Fourth-Amendment rights by using the straight-arm bar takedown technique when Bozung was not resisting arrest, and when Rawson could not reasonably have concluded that he was doing so.

Rawson stopped Bozung's vehicle for a trivial infraction. Although the driver fled, and Bozung had an outstanding warrant, Rawson had no reason to believe that Bozung had committed a serious crime. Bozung did not attempt to flee. Instead, after parking, he exited the truck and moved to the back of the vehicle as directed. Bozung did not threaten Rawson, and there was no

evidence that he had a weapon. According to Rawson's deposition testimony, Bozung was "calm and collected" and was not "boisterous or combative in any way." Bozung exited the vehicle slowly, holding onto the truck bed for balance. Neighbor James Leggions testified in his deposition that Bozung was "off balance" and "walked like he had a problem with his legs." Bozung advised Rawson that he had had a total hip replacement and had a plate and screws in his right ankle. Onlookers also shouted that Bozung was handicapped.

I agree with the majority that we must assume that Rawson told Bozung to place his hands behind his back, even though Bozung argues on appeal that he never received such an order. Bozung stated in his deposition that he did not recall receiving an order from Rawson to put his hands behind his back. Bystanders Leggions and Melonie Harris did not report hearing such an order. Bozung's lawyer, however, argued to the district court that Bozung was ordered to place his hands behind his back but, given his disability, needed more time to comply with the order. Bozung's response to the defendants' motions for summary judgment states that Rawson ordered him "to walk to the rear of the vehicle and to place his hands behind his back to be cuffed." Bozung cannot present a new argument on appeal. *See Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006) ("Allowing [plaintiff] to present a new theory of her case on appeal that was not alleged below would permit her two bites at the apple, a practice that would be very disruptive of orderly trial procedure.").

The majority's reliance on *Scott v. Harris* is misplaced. The record shows that" opposing parties [have told] two different stories," and a "genuine" dispute as to the sequence of events exists. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)). Even if we assume Bozung received an order to place his hands behind his back, whether Rawson's actions were reasonable turns on disputed issues of fact. We do not know how clear and forceful the order was, nor how long Rawson gave Bozung to comply with the order before taking him to the ground. The majority emphasizes Bozung's "concession" in his deposition that he stood outside the truck for "maybe . . . two to three minutes" before he was taken to the ground, construing this delay as evidence that Bozung resisted Rawson's order. But we must view the facts as a whole in the light most favorable to Bozung, not simply pounce on any detail that could weaken his case. Officer Wilson's testimony suggests that the delay was shorter: he estimated that "at least 30 seconds passed" between the time that Rawson gave Bozung the instruction and when he performed the takedown maneuver. Leggions testified that "after [Bozung] got almost around his truck, [Rawson] ran over and thr[ew] him to the ground." Even if Bozung was out of the truck for two minutes, moreover, we do not know how long after he exited the truck the order to place his hands behind his back was given. There is also a factual dispute as to whether Bozung struggled when Rawson attempted to handcuff him. The plaintiff's version of events is *not* "blatantly contradicted by the record," and a "reasonable jury could believe it." *Ibid.* With so much uncertainty as to what actually happened, the "facts must be viewed in the light most favorable to the nonmoving party." *Ibid.*

More importantly, there are disputed facts regarding whether Bozung's handicap and his inability to comply at once with Rawson's order should have been apparent to Rawson. Bozung, Officer Wilson, and Ms. Harris all testified that Bozung indicated to Rawson that he was attempting to comply with the order. Bozung stated in his deposition that he told Rawson he was disabled and said, "it's going to take me a few minutes." Harris stated that Bozung yelled, "wait and minute, wait a minute," but that Rawson responded, "well, I guess you want this done the hard way" and grabbed him. Officer Wilson testified that Bozung responded to Rawson's command to place his hands behind his back by saying "I am, I am." According to Bozung, Rawson ignored these protests and slammed him to ground with sufficient force to lacerate his forehead and fracture his hand. Construing the facts in the light most favorable to Bozung, a jury could find, in light of Bozung's handicap and lack of resistance, that it was unreasonable for Rawson to perform the takedown maneuver to handcuff Bozung, and that Rawson's conduct thus violated Bozung's Fourth-Amendment rights.

Furthermore, Rawson is not entitled to qualified immunity. A "defendant enjoys qualified immunity on summary judgment unless the facts alleged and the evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009). A right is clearly established if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he

is doing violates that right." *Binay v. Bettendorf*, 601 F.3d 640, 646–47 (6th Cir. 2010). The facts, taken in the light most favorable to Bozung, would permit a finding that the force Rawson used was not only unnecessary, but would have been recognized as such "by a reasonable officer in his position." *Phelps v. Coy*, 286 F.3d 295, 302 (6th Cir. 2002). The right to be free from excessive force is clearly established, *see Graham*, 490 U.S. at 394–95, as is "the right to be free from physical force when one is not resisting the police," *Wysong*, 260 F. App'x at 856. Here, there is a genuine issue of material fact as to whether Bozung resisted arrest. If he did not resist, a reasonable officer would have known that it was unnecessary to force him to the ground to handcuff him. The grant of summary judgment for Rawson was therefore improper.